## UNITED STATES v. DE NORMAND et al.

### No. 256.

Circuit Court of Appeals, Second Circuit.

May 14, 1945.

Morris E. Packer, of Brooklyn, N. Y., and Morris D. Reiss, of New York City, for appellants.

John F. X. McGohey, U. S. Atty., (John C. Hilly, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

SWAN, Circuit Judge.

The appellants were found guilty on all nine counts of an indictment. Each of the first eight counts was based on 18 U.S.C.A. § 409 and charged that the defendants "unlawfully, wilfully and knowingly did steal, take and carry away from certain trailer trucks of the Rapid Motor Lines, Inc." goods belonging to various shippers or consignees and forming part of an interstate shipment of freight. The ninth count charged conspiracy to violate said section 409. Cumulative sentences of imprisonment were imposed with the result that DeNormand has received a term of 17 years, Oddo 15 years, and La Cascia, King and Mugavero, 12 years each. All of the appellants rely upon the same points for reversal; they contend (1) that the undisputed proof shows that section 409 was not violated; (2) that Stegman's act in driving away one of the trucks cannot be imputed to the appellants; (3) that the consecutive sentences are illegal; (4) that the corpus delicti was not proved; and (5) that error was committed in denying them inspection of statements given to the United States Attorney by a witness for the prosecution.

On the night of November 30, 1943 the five appellants met near the terminal of Rapid Motor Lines, Inc., an interstate carrier of freight, for the purpose of putting into execution their previously arranged plan to hijack two truck loads of liquor which they knew were to be sent out that night to New Haven, Conn. They were accompanied by one Stegman whom they regarded as a confederate, although he was actually a government informer working in conjunction with agents of the Federal Bureau of Investigation. The terminal was located on the west side of Tenth Avenue between 23rd and 24th Streets in New York City. Inside the terminal building were two loaded trucks referred to as truck 3 and truck 4. Truck 3 was a canvas top truck without seals; it contained the merchandise involved in counts 1 and 2 of the indictment. Truck 4 was a completely closed truck with locked doors and contained the merchandise involved in counts 3 to 8 inclusive. Roche, the dispatcher for the Rapid Motor Lines, locked the doors of the terminal, set the burglar alarm and left at about 5:30 P.M. Shortly before midnight the two employees who were to drive trucks 3 and 4 to New Haven arrived at the terminal in two other trucks. They opened the terminal doors, drove out trucks 3 and 4, and parked them on the east side of Tenth Avenue, leaving the cabs open and the ignition unlocked; truck 4 was parked between 23rd and 24th Streets, truck 3 between 24th and 25th Streets. The drivers put in the terminal the trucks in which they had arrived, closed and locked the terminal doors and reset the burglar alarm; they then walked to a restaurant at the corner of Tenth Avenue and 23rd Street for a cup of coffee. Some 15 minutes later they left the restaurant and, as they approached their two parked trucks, the appellants held them up, forced them at gun point to open and enter the terminal, and there gagged and bound them and left them in an empty truck. The appellants then walked from the terminal and were arrested by federal agents who had been watching the terminal since 7 P.M. Meanwhile Stegman had driven away truck 3 to a garage at 117th Street and First Avenue which the appellants had selected for "a drop". He testified that in so doing he was following DeNormand's instructions but had no intent to steal the truck or its contents as he was cooperating with the federal agents.

The foregoing is a summary of the facts relied upon by the prosecution to establish the substantive offenses. Much evidence was adduced at the trial to show the conspiratorial background. Government witnesses testified that the plan to hijack the liquor had originated in the mind of DeNormand and that through his efforts the other defendants had been brought into the conspiracy. DeNormand, on the other hand, testified that Stegman had

instigated the plan and that the defendants had merely followed Stegman's leadership. In short, it was the theory of the defense that the defendants had been entrapped into committing a crime they would not otherwise have undertaken. This defense is not renewed upon appeal, nor could it be; for the judge charged the jury as to the law of entrapment, and the jury by its verdict found that the criminal intent had originated with the defendants rather than with Stegman.

 (1) The first contention of the appellants is that there was no violation of 18 U.S.C.A. § 409 with respect to truck 4 because there was no asportation of that truck or any of its contents. Neither the appellants nor Stegman ever moved it from where driver Fiak had parked it, nor did they even touch it. If the statute prohibited only common law larceny of goods moving in interstate commerce, we should agree that some asportation, however slight, was essential to constitute the offense. See 2 Wharton, Criminal Law, 12th Ed. § 1163; Harrison v. People, 50 N.Y. 518, 10 Am.Rep. 517; State v. Alexander, 74 N.C. 232. But the statute is not framed in terms merely of larceny and its prohibitions should not be restricted to technical common law larceny. In White v. United States, 2 Cir., 273 F. 517, 518, Judge Hough remarked that "The essential object of this statute is to create, define, and punish the offense of abstracting or unlawfully having in possession goods while in interstate or foreign transit, and thereby interfering with interstate or foreign commerce." Verbally the statutory language embraces "whoever shall steal or unlawfully take, carry away, or conceal * * * with intent to convert to his own use any goods" which are a part of an interstate or foreign shipment of freight. In United States v. Handler, 2 Cir., 142 F.2d 351, certiorari denied October 9, 1944, 65 S.Ct. 40, this court pointed out at page 353 of 142 F.2d that in various federal statutes the word "steal" or "stolen" has been given a broader meaning than larceny at common law, and we held that the National Stolen Property Act, 18 U.S.C.A. § 415, applies to any taking whereby a person dishonestly obtains goods or securities belonging to another with the intent to deprive the owner of the rights and benefits of ownership. The purpose and the language of the statute now before us require an equally broad construction. In United States v. Cohen, 3 Cir., 274 F.

596, 597, the court said that the word "steal" is defined by the words "unlawfully take, carry away, * * * with intent to convert to his own use", and expressed the opinion that "To constitute 'stealing' there must be an unlawful taking and carrying away" with the requisite intent. In our opinion this view fails to observe that the statutory prohibitions are stated in the disjunctive. We believe that the language should be construed as though it read "whoever shall steal or unlawfully take [or] carry away or conceal * * * with intent to convert to his own use." The trial court instructed the jury that to convict they must find an unlawful taking of the goods by the defendants. We think this charge was correct and that the acts of the appellants in holding up, gagging and binding its driver did constitute an unlawful taking of truck 4 and its contents within the meaning of the statute. It cannot be doubted that the parked truck was in the constructive possession of the carrier, Rapid Motor Lines, Inc., until the moment its employee Fiak was seized by the appellants. By that act they deprived the carrier of power to exercise control or dominion over the truck and acquired such power for themselves; thus whatever possession the carrier or its employee had was transferred to them. If they did not take actual physical possession they at least took constructive possession. In Le Fanti v. United States, 3 Cir., 259 F. 460, it was held that constructive possession in the defendant was sufficient to support a conviction for receiving stolen goods contrary to another clause of section 409. The unlawful "taking" of constructive possession should likewise serve to complete the offense under that clause of the statute we are now considering. Hence the appellants were properly found guilty on counts 3 to 8 of the indictment.

(2) What we have said regarding the taking of possession of truck 4 applies equally to truck 3. Since the crime was complete without asportation, it is unnecessary to consider the appellant's argument that Stegman's act in driving truck 3 to the "drop" agreed upon cannot be imputed to the appellants, since he was acting in conjunction with the F. B. I. agents and lacked the requisite intent to commit the offenses charged in counts 1 and 2. Cf. United States v. Abdallah, 2 Cir., 149 F.2d 219.

 (3) The appellants argue that even if the proof showed them guilty of

unlawfully taking both trucks, their acts constituted only a single crime; hence the imposition of cumulative sentences was illegal. Each of the appellants received concurrent sentences on counts 1 and 2, relating to goods in truck 3, and also concurrent sentences on counts 3 to 8, relating to goods in truck 4, but the sentences imposed on the latter group of counts were to run consecutively to those imposed on the former group, and in addition the sentence imposed on the conspiracy count was to run consecutively to the sentences on the substantive counts. We see no error in these successive sentences. The substantive offense of unlawfully taking possession of truck 3 and its contents is distinct from that of taking possession of truck 4 and its contents. The acts of taking were distinct. Custody of truck 3 was in driver Cimino, custody of truck 4 in driver Fiak; DeNormand held a gun at Cimino's back and King held a gun at Fiak's back, as they marched them off to the terminal. The case is governed by Ebeling v. Morgan, 237 U.S. 625, 35 S.Ct. 710, 59 L.Ed. 1151, where the court held that the cutting into each of several mail sacks in a railway postal car constituted a separate crime for which the defendant could be separately punished. Justice Day, at page 629 of 237 U.S., at page 711 of 35 S.Ct. 59 L.Ed. 1151, said that a reading of the statute there involved showed "the intention of the lawmakers to protect each and every mail bag from felonious injury and mutilation." Similarly, in section 409, the prohibition is against taking "from any * * * truck". See also Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306; United States v. Busch, 2 Cir., 64 F.2d 27, certiorari denied 290 U.S. 627, 54 S. Ct. 65, 78 L.Ed. 546. Hence there was no error in cumulating the sentences imposed under the two groups of substantive counts. Nor can it be doubted that the district judge had power to impose an additional punishment for the crime of conspiracy, although the conspiracy had been so far executed as to accomplish the substantive offenses which were its aim. Hartson v. United States, 2 Cir., 14 F.2d 561.

■ (4) The contention that proof of the corpus delicti was lacking deserves but brief discussion. The argument is that although the testimony showed what merchandise was in the trucks at 5:30 P. M., no proof was adduced that they contained the same merchandise at the time the drivers were held up shortly after midnight. This is surely clutching at straws. Roche, the last employee to leave the terminal in the afternoon, testified to putting the seals on truck 4, locking the terminal doors and setting the burglar alarm at 5:30 P.M. From 7 P.M. until the arrival of driver Fiak about 11:30 P. M. the terminal was under observation by federal agents, and Fiak found the burglar alarm still set. The suggestion that goods may have been removed while the trucks were parked on Tenth Avenue and the drivers in the restaurant is equally fanciful for the seals on truck 4 were still undisturbed and the canvas top on truck 3 still tightly tied down after the hold-up. Circumstantial evidence of the corpus delicti, if convincing, is sufficient. United States v. Adelman, 2 Cir., 107 F.2d 497, 498. Here the evidence leads irresistibly to the inference that the contents of the trucks had not been disturbed after 5:30 P.M.

■ (5) The final error alleged is the refusal of the trial judge to admit statements given by government witness Wagner to the prosecutor before trial. The judge refused the appellants' attorney's request to inspect the statements but read part of them himself and found "personally nothing prejudicial therein, and nothing that the defendants could make much use of". He provided, however, that the defendants could make the statements part of the record so that this court upon appeal could determine for itself whether the document had been wrongfully excluded. See United States v. Cohen & Leonard, 2 Cir., 148 F.2d 94; United States v. Simonds, 2 Cir., 148 F.2d 177. In United States v. Ebeling, 2 Cir., 146 F. 2d 254, at page 257, in speaking of United States v. Krulewitch, 2 Cir., 145 F.2d 76 we said: "But the Krulewitch case was limited expressly to the situation where the prosecution had in its possession a document signed by a witness which definitely contradicted the important testimony she had given on the stand. A statement of like nature which did not, however, show such a contradiction would not have been admissible, as was held in United States v. Cohen, 2 Cir., 145 F.2d 82." Under this interpretation of the Krulewitch and Cohen cases, neither covers the exact situation present in this case.

where the excluded document contains minor contradictions of relatively unimportant testimony. Wagner testified only to the earlier phases of the conspiracy which was indubitably proven. Conviction certainly did not turn upon his testimony. We hold that where the document is available to our inspection, we will not reverse unless it appears that its exclusion was not only wrongful but prejudicially so, in accordance with the usual rule of non-prejudicial error.

The convictions are affirmed.