UNITED STATES of America, Appellee,

· v.

Felix PADILLA, Appellant.

No. 320, Docket 30176.

United States Court of Appeals Second Circuit.

Argued Jan. 25, 1967.

Decided March 13, 1967.

Phylis Skloot Bamberger, New York City (Anthony F. Marra, New York City, on the brief), for appellant.

John H. Doyle, III, Asst. U. S. Atty., Southern Dist. of New York (Robert M. Morgenthau, U. S. Atty., and Robert G. Morvillo, Asst. U. S. Atty., on the brief), for appellee.

Before MOORE and FRIENDLY, Circuit Judges, and BRYAN, District Judge.*

* Of the Southern District of New York, sitting by designation.

FREDERICK van PELT BRYAN, District Judge:

Felix Padilla has been convicted of the theft of two pairs of women's slacks valued at less than $100, part of an interstate freight shipment, in violation of 18 U.S.C. § 659, after trial before Judge Herlands without a jury in the Southern District of New York.[1] On this appeal from the judgment of conviction Padilla's sole contention is that he should not have been convicted because it was not proved at the trial that the slacks had been stolen or taken "from" the motortruck in which the interstate shipment was being carried as required under § 659.

Viewing the evidence in the light most favorable to the Government as we must, the following quite simple facts relevant to this contention can be deemed established by the record.

On December 9, 1964 Padilla was assigned as a helper on a motortruck operated by City Carriers, Inc. engaged in the delivery of interstate freight shipments. During that day he described to Roosevelt Smith, the driver of the truck, a method by which he could remove the contents of cartons of one of the shippers, National Togs, without breaking them open, and indicated to Smith that he had previously stolen goods in that manner.

The next day the truck made several deliveries of interstate shipments and then was parked for lunch at 11th Avenue and 42nd Street. While the cartons in the body of the truck were being rearranged for afternoon delivery Smith saw Padilla trying to get his hand into a sealed National Togs carton. When he was unable to do so Padilla worked his way into a second carton and pulled out two pairs of women's slacks. He hid the slacks in the front of the body of the truck and placed several cartons on top of the carton from which he had taken them. This was done over Smith's protests and Padilla asked him to keep quiet about it.

1. Imposition of sentence was suspended and Padilla was placed on probation for eighteen months.

Nevertheless Smith telephoned his boss, Bell, who arrived shortly with two F. B. I. agents. Smith and Padilla were in the front seat of the truck. Smith, who had keys to the back of the truck (which Padilla did not), unlocked the rear doors. Smith pointed out the carton which had been broken into and the place where the slacks were hidden. The agents took the slacks from their hiding place. Later Padilla was arrested and charged with the theft. There was evidence that after the arrest Padilla had offered inducements to Smith to persuade Smith not to testify against him.

Padilla took the stand in his own defense and denied taking the slacks or trying to persuade Smith not to testify.

## I.

Section 659 of Title 18, in relevant part, reads as follows:

"Whoever embezzles, steals, or unlawfully takes, carries away, or conceals, or by fraud or deception obtains from any railroad car, wagon, motortruck or other vehicle, or from any station, station house, platform or depot or from any steamboat, vessel, or wharf, or from any aircraft, air terminal, airport, aircraft terminal or air navigation facility with intent to convert to his own use any goods or chattels moving as or which are a part of or which constitute an interstate or foreign shipment of freight * * *."

The information charged that Padilla "with intent to convert to his own use, did embezzle, steal, take and carry away from a City Carriers, Inc. Mortortruck [sic] * * * two pairs of women's slacks, which were moving as, were part of and constituted an interstate shipment of freight and express from New York, New York, to Chicago, Illinois," in violation of § 659.[2]

Padilla contends that to establish the charged violation of § 659 it was necessary for the Government to show that he had physically removed the slacks from—that is to say out of—the truck in which they were being transported. His theory is that the phrase in § 659 "from any * * * motortruck'" coming after the words "steals, or unlawfully takes" must be construed to require such proof before a crime can be said to have been committed. He therefore urges that since he had merely hidden the slacks taken from the carton in the body of the truck where they remained until the agents found them, and had at no time taken them out of the vehicle, proof of an essential element of the crime charged was lacking and he should have been acquitted.

■ We see no merit in this contention. We hold that a theft or unlawful taking under § 659 was complete when Padilla removed the slacks from the carton in the body of the truck and reduced them to his possession and control with the intent to convert them to his own use. Hiding the slacks in the front of the body of the truck after he had acquired dominion over them, with a view to disposing of them later, was additional evidence of his intent to convert them to his own use and of the completion of the crime.

## II.

■ There are three elements of the crime defined in § 659 as charged in the information. It must be proved (1) that the slacks were stolen or unlawfully taken by the accused with intent to convert them to his own use; (2) that the slacks were "part of an interstate * * * shipment of freight"; and (3) that the slacks were stolen or unlawfully taken "from" the City Carriers' motortruck.

It is the last of these three elements which Padilla contends was not proven.

However, the phrase "from any * * motortruck" as used in the context of the statute does not, as Padilla contends, require that the goods be physically removed from the vehicle—that is to say actually taken out of it—before the crime

2. The information failed to allege that Padilla "concealed" the slacks.

of theft or unlawful taking from interstate commerce can occur. While the preposition "from" may be used to indicate physical removal or asportation it is not so used here. An ordinary and usual meaning of "from" is to indicate a starting point. Webster's International Dictionary 1012 (2d ed. 1953); The Shorter Oxford English Dictionary 754 (3d ed. 1955). That is the sense in which it is used in § 659—to indicate the facility in which the theft or taking from interstate commerce must initiate in order to have the statute apply.

Moreover, the construction for which Padilla contends would do violence to other language in the statute. While it might be argued that "steals, or unlawfully takes, * * * from any" of the enumerated facilities could be literally read to imply a requirement of actual removal from the facility, that could scarcely be true when the phrase "from any" facility is applied to the word "conceals." To "conceal from * * * any motortruck" makes little sense unless "from" be read as indicating the starting point of the act charged—that is to say the facility in which the goods were located when the act began.

This is in substance the construction of the statute adopted by this Court in United States v. De Normand, 149 F.2d 622 (2d Cir. 1945), cert. den., 326 U.S. 756, 66 S.Ct. 89, 90 L.Ed. 454 (1945). There the defendants were charged with stealing merchandise moving in interstate commerce from trailer trucks in violation of then 18 U.S.C. § 409,[3] the predecessor of § 659. The driver of one of the trucks had taken it from the terminal and parked it in the street while he went for a cup of coffee. As the driver was returning to the parked truck he was held up by defendants at gunpoint before he reached the truck, was taken to the terminal and was placed bound and gagged inside an empty truck there. Defendants were arrested as they left the terminal and before they reached the parked truck. The truck remained sealed. The defendants had not moved any of its contents or even touched it.

The Court rejected the contention that § 409 had not been violated "because there was no asportation of the truck or any of its contents." It held that the stealing or unlawful taking contemplated by the statute was complete when the defendants by seizing the driver took over dominion or control of the truck from the carrier. Defendants thus acquired at least constructive possession of the truck and its contents and this was sufficient.

In this aspect the case at bar is, if anything, stronger than De Normand. Here Padilla actually reduced the slacks to his physical possession, exercised dominion over them with intent to convert them to his own use and hid them for later disposition.

De Normand makes it clear that the enumeration of the specific interstate transportation facilities "from" which goods must be abstracted does not import physical removal of the goods out of or away from one of the enumerated facilities or even asportation in the common law larceny sense. The phrase merely limits the proscription of the statute to takings which initiate or occur at the types of interstate transportation facilities specified.

### III.

While the statute as it read when De Normand was decided was amended in 1946 and was reworded on recodification in 1948, no meaningful change was made which would alter the essential object of the statute or require any different construction than we have given it.

3. The statute then read as follows: " * * whoever shall steal or unlawfully take, carry away, or conceal, or by fraud or deception obtain from any railroad car, station house, platform, depot, wagon, automobile, truck, or other vehicle, or from any steamboat, vessel, or wharf, with intent to convert to his own use any goods or chattels moving as or which are a part of or constitute an interstate or foreign shipment of freight or express * * *." 37 Stat. 670 (1913), as amended, 18 U.S.C. § 409 (1940 ed.).

The statute was first enacted in 1913 [4] because of the difficulties being encountered in prosecutions in the state courts for the increasing number of thefts from interstate commerce which were having a disruptive effect on the interstate flow of goods. It was thought that by supplementing state jurisdiction by federal legislation venue and other problems which were plaguing state authorities in cases of this nature would be minimized. See Senate Rep.No.1732, 62d Cong., 3d Sess. (1913); 49 Cong. Rec. 1780–82, 2480–81 (1913) (Senate debates).

Thus, to close the gap the 1913 act provided two bases of federal jurisdiction—(1) that the goods taken be part of an interstate shipment, and (2) that the taking be "from"—that is to say occur at—particular interstate transportation facilities which were enumerated. See O'Kelley v. United States, 116 F.2d 966, 968 (8th Cir. 1941); United States v. Moynihan, 258 F. 529 (3d Cir. 1919); cf. Stirone v. United States, 361 U.S. 212, 218, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960) (construing the Hobbs Act, 18 U.S.C. § 1951). At that time, of course, interstate commerce was conducted largely by railroad and vessel.

By 1925, however, the use of automotive vehicles in interstate transportation had vastly increased. Some courts had been reluctant to construe the jurisdictional reach of the statute to include such vehicles. It therefore became necessary, in order to close this loophole, to amend the act so as to add motor vehicles and their transfer and storage facilities to the interstate transportation facilities enumerated from which the proscribed thefts or takings must occur. Act of Jan. 28, 1925, ch. 102, 43 Stat. 793; see Senate Rep.No. 814, 68th Cong., 2d Sess. (1925).

The 1946 amendment [5] like the prior amendment was made to close loopholes in the act, this time by combining "the crime of embezzlement with that of larceny and making the entire act applicable to air transportation." House Rep.No. 1116, 79th Cong., 2d Sess. (1946); see United States v. O'Connell, 165 F.2d 697, 699 and n. 5 (2d Cir. 1948). We see nothing in that amendment which could be said to limit or restrict the coverage of the act as it stood when *De Normand* was decided or to make the holding of that case no longer applicable.[6]

Such cases as United States v. Manuszak, 234 F.2d 421 (3d Cir. 1956) and

---

4. Act of Feb. 13, 1913, ch. 50, 37 Stat. 670. The relevant portion reads:
   " * * * whoever shall steal or unlawfully take, carry away, or conceal, or by fraud or deception obtain from any railroad car, station house, platform, depot, steamboat, vessel, or wharf, with intent to convert to his own use any goods or chattels moving as, or which are a part of or constitute, an interstate or foreign shipment of freight or express * * *."

5. Act of July 24, 1946, ch. 606, 60 Stat. 656, amending 18 U.S.C. § 409 (1940 ed.).
   "(a) Whoever shall
   *    *    *    *    *
   (2) embezzle, steal, or unlawfully take, carry away, or conceal, or by fraud or deception obtain from any—
   (i) railroad car, motortruck, wagon, or other vehicle,
   (ii) * * *
   (iii) * * *
   (iv) aircraft, airport, aircraft terminal or air navigation facility,

   any goods or property moving as or which are a part of or which constitute an interstate or foreign shipment of freight or express, with intent to convert such goods or property to his own use * * *."

6. The changes made on recodification of the Criminal Code of 1948, when § 409 was combined with other sections to form § 659, were not meant to change existing law in any respect. See United States v. Cook, 384 U.S. 257, 260, 86 S.Ct. 1412, 16 L.Ed.2d 516 (1966); House Rep. No. 304, 80th Cong., 2d Sess. (1948); Holtzoff, Preface to Title 18 U.S.C.A. (1950 ed.).

   The Act of May 24, 1949, ch. 139, 63 Stat. 91, made slight changes in the second and fourth paragraphs of § 659, which are not involved in the present case. The purpose of these changes was "to restore the language of the original from which such section was derived." House Rep. No. 352, 81st Cong., 1st Sess. (1949).

United States v. Wora, 246 F.2d 283 (2d Cir. 1957), both decided after the statute had been amended, do not lead to any different conclusion. *Manuszak* merely held that the failure of an indictment under § 659 to specify the place or facility from which the goods were taken was a fatal defect which required reversal of a conviction under that section. *Wora*, while agreeing that in order to convict it had to be shown that the goods had been taken from one of the enumerated facilities, declined to follow *Manuszak* to the extent that it held the absence of such an allegation in the indictment to be fatal. Neither of these cases held directly or by implication that the phrase "from any * * * motortruck, etc." in the statute as it presently reads, requires that the goods stolen or taken be physically removed from the truck or other enumerated facility before the crime defined in § 659 can be said to have taken place.

In United States v. Berger, 338 F.2d 485 (2d Cir. 1964) this court in affirming a conviction under § 659, refused to read narrowly the words "interstate shipment of freight and express" in the statute and said (p. 487):

"[W]e must also be mindful that Congress has here undertaken to protect and promote the flow of goods in interstate commerce, and that this undertaking is not to be hampered by technical legal conceptions."

Unduly narrow reading of that and other language of the statute has been rejected in a number of other cases in this and other circuits. E. g., United States v. De Fina, 315 F.2d 362 (2d Cir. 1963); United States v. D'Antonio, 342 F.2d

667 (7th Cir. 1965); Sterling v. United States, 333 F.2d 443 (9th Cir. 1964).

In White v. United States, 273 F. 517, 518 (2d Cir. 1921) the object of this statute was said by Judge Hough (quoted with approval in *De Normand*) to be "to create, define, and punish the offense of abstracting or unlawfully having in possession goods while in interstate or foreign transit, and thereby interfering with interstate or foreign commerce." The Supreme Court in United States v. Cook, 384 U.S. 257, 86 S.Ct. 1412, 16 L.Ed.2d 516 (1966) has recently said:

"We are mindful of the maxim that penal statutes should be strictly construed. But that canon 'is not an inexorable command to override common sense and evident statutory purpose,' United States v. Brown, 333 U.S. 18, 25 [68 S.Ct. 376, 380, 92 L.Ed. 442,] and does not ‘require that the act be given the "narrowest meaning." It is sufficient if the words are given their fair meaning in accordance with the evident intent of Congress.'" 384 U.S. at 262–263, 86 S.Ct. at 1415.

See also United States v. Turley, 352 U.S. 407, 417, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957) dealing with the term "stolen" as used in the Dyer Act, 18 U.S.C. § 2312.

We have construed the language of the statute before us in accordance with these precepts.

## IV.

▮ Finally, it has been suggested that Padilla's conduct had not gone far enough to constitute a completed theft as distinguished from an attempt to steal and that therefore conviction under § 659 was unwarranted.[7]

7. Padilla could not have been convicted of an attempt to violate § 659. Rule 31(c), F.R.Cr.P., provides that "[t]he defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein *if the attempt is an offense*." (Emphasis added.) Thus, unlike many state criminal codes, see, e. g., Calif.Pen.Code § 663 (Deering 1959); N. Y.Penal Law, McKinney's Consol.Laws, c.

40, § 260; N.Y.Proposed Pen.Law § 110.00; Model Penal Code § 5.01 (Prop.Official Draft 1962), federal criminal statutes contain no general attempt provision. An attempt to commit a federal crime is punishable only where the section defining the crime specifically includes an attempt within its proscription. See United States v. Lucas, 6 F.2d 327 (W.D.Wash.1925); Michael and Wechsler, Criminal Law and Its Administration 584 n. 3 (1940). A number of fed-

Under the view we have taken of the statute this is not a valid suggestion. As was said in *De Normand*, 149 F.2d at 624, " * * * the statute is not framed in terms merely of larceny and its prohibition should not be restricted to technical common law larceny * * *."

In any event, the evidence clearly showed that Padilla took physical possession of the slacks, exercised dominion over them to the exclusion of the owner and then hid them some distance away from where he took them. This would be sufficient to satisfy even common law larceny requirements. Michael and Wechsler, Criminal Law and Its Administration 415 (1940); see People v. Ashworth, 220 App.Div. 498, 222 N.Y.S. 24 (4th Dept. 1927); Harrison v. New York, 50 N.Y. 518 (1872). Padilla's conduct clearly had crossed the somewhat elusive line between an attempt to steal and a completed theft. See American Law Institute, Model Penal Code § 223–2(1) (Proposed Official Draft 1962), and comment on this section in Tent. Draft No. 1, at 65 (1953).

Affirmed.

FRIENDLY, Circuit Judge (concurring):

The history of 18 U.S.C. § 659 told in Judge Bryan's thorough opinion, although, as so often is the case, it was not developed at all by counsel, is an interesting example how draftsmen and revisers can create problems as to the meaning of statutes without busy legislators having any notion what is occurring. Cf. People of State of N. Y. v. Galamison, 342 F.2d 255, 260–261, 8 A.L.R.3d 263 (2 Cir.), cert. denied, 380 U.S. 977, 85 S.Ct. 1342, 14 L.Ed.2d 272 (1965). It seems clear to me as a matter of the natural meaning of language that when the statute was enacted, see fn. 4 to Judge Bryan's opinion, and as it stood when United States v. De Normand, 149 F.2d 622 (2 Cir. 1945), was decided, the "from" phrase related solely to cases where the charge was that the defendant had "by fraud or deception obtain[ed]," with the other verbs applying to *any* goods or chattels constituting interstate or foreign shipments of freight or express. The comma before the words "with intent to convert" etc. effectively insulated the "by fraud or deception obtain" phrase. That, I think, was the precise basis for Judge Swan's holding in *De Normand*, 149 F.2d at 624, as well as for what Judge Hough said in White v. United States, 273 F. 517, 518 (2 Cir. 1921). It is equally clear to me that, as the statute stood between the Act of July 24, 1946, see fn. 5 to Judge Bryan's opinion, and the 1948 codification, the reading my brothers give the present act would have been so contrary to the ordinary meaning of language as to be impermissible in the construction of a penal statute where, despite such decisions as United States v. Turley, 352 U.S. 407, 417, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957) and United States v. Cook, 384 U.S. 257, 86 S.Ct. 1412, 16 L.Ed.2d 516 (1966), we encounter the opposite pull of the "rule of lenity," Bell v. United States, 349 U.S. 81, 83–84, 75 S.Ct. 620, 99 L.Ed. 905 (1955)—although I agree that almost certainly Congress was unaware of the change the draftsman had wrought. Then came the 1948 codification which, asserting its purpose to preserve throughout "the original intent of Congress," S.Rep.No.1620, 80th Cong., 2d Sess., p. 1, gave this statute a form that was neither what it had originally been nor what it had unintentionally become.

I am content to join my brothers in following the legislative zig with a judicial zag, first narrowing the statute from its "ur" form by making the "from any station" etc. language apply to all the verbs and then broadening it by reading "from" to include "in"—although it would not take much to persuade me that Congress might have been content to

---

eral criminal statutes specifically mention attempts. See, e. g., 18 U.S.C. § 2113(a) ("Whoever enters or attempts to enter"); 18 U.S.C. § 546 ("for the purpose of smuggling, or attempting to smuggle"); 18 U.S.C. § 1113 ("attempts to commit murder or manslaughter"). § 659 does not refer to an attempt.

allow such minor offenses as Padilla's to be handled by the states rather than to invoke against them the mighty apparatus of the federal criminal law.