**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jerome FUSCO, Defendant-Appellant.**

**No. 16633.**

United States Court of Appeals
Seventh Circuit.

July 2, 1968.

Raymond J. Smith, Chicago, Ill., for appellant.

Nicholas M. Karzen, Thomas A. Foran, U. S. Atty., John Peter Lulinski, Gerald M. Werksman, Asst. U. S. Attys., of counsel, for appellee.

Before KNOCH, Senior Circuit Judge, and KILEY and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

Defendant Jerome Fusco and Richard Malone, according to an indictment under Section 659 of the Criminal Code (18 U.S.C. § 659), "did unlawfully embezzle, steal, take, carry away, and by fraud and deception obtain from" a Mobil Oil Corporation oil truck 470 gallons of gasoline, worth more than $100, with intent to convert it to their own use. The crime is alleged to have taken place on February 23, 1967, in Chicago, Illinois. Malone pleaded guilty and testified for the Government at Fusco's trial.

The Government answered the question presented in Fusco's bill of particulars as to who took and carried away the amount of gasoline, as charged in the indictment, as follows:

"The government respectfully submits that this question is answered by plain reading of the indictment which means that since it says that Fusco and Malone took and carried away this property, that obviously Fusco must have taken it and carried it away."

According to the evidence, in February 1967 Malone was a truck driver for Mobil Oil Corporation in Hammond, Indiana, and Fusco operated a Mobil gas station at 500 West 47th Street, Chicago, Illinois. This station was on Mobil's direct sales plan whereby gasoline is delivered to the station which is simultaneously billed therefor.

Another Mobil wholesale customer, Hyde Park Car Wash, Inc. at 1330 East 53rd Street, Chicago, was on Mobil's "meter wholesale plan." Under this consignment plan, the delivered gasoline remains the property of Mobil until sold by the dealer through his gasoline service pumps.

On February 23, 1967, Malone's truck was loaded with 8500 gallons of gasoline in Hammond, Indiana, for delivery to the Hyde Park station. Instead of delivering all 8500 gallons there, Malone retained 470 gallons of regular gasoline in his trailer tank and left his metered delivery tickets in the meter on the trailer tank instead of cranking the handle to release the tickets upon the Hyde Park delivery. The two delivery tickets respectively covered the load of both regular and premium gasoline. By leaving the meter delivery tickets in the meter after this delivery, Malone planned to register the remaining 470 gallons on the same tickets as the delivery to the Hyde Park station, so that it would appear that the entire 8500 gallons had been delivered at the Hyde Park station.

Malone next went to Fusco's station and told him that he had some gasoline. Although Fusco did not have any delivery order pending, he told Malone that it was "all right to drop it." Thereupon, Malone started emptying the gas from the truck into Fusco's gas tanks. While Malone was unloading the gasoline, an FBI agent, Antonius Genakos, and a Mobil representative, Francis A. Torpe, called upon Fusco. Fusco knew that Genakos was an FBI agent. Shortly thereafter, they and Fusco emerged from the service station office as Malone was completing the unloading of the 470 gallons of regular gasoline. Fusco asked Malone how much the charge was and paid Malone the requested $40. Malone left no receipt with Fusco and kept the $40 for himself.

Before Malone returned to Mobil's Hammond terminal, he cranked the two delivery tickets out of the meter and later turned them in to his dispatcher, thus indicating delivery of all 8500 gallons to the Hyde Park station.

One of the salesmen for Mobil testified that the retail price of regular gas in the area of Fusco's service station was 34.9 cents a gallon in February

1967. The wholesale price, including taxes of 9 or 10 cents, was 26.5 cents per gallon, or $124.55 for the 470 gallons ($82.25 if 9 cents in federal and state taxes were deducted).

To show intent, the Government was permitted to introduce evidence of prior, similar 1966–1967 purchases by Fusco from Malone and another Mobil truck driver. A third Mobil driver testified that Fusco unsuccessfully solicited such a purchase from him in 1964.

The defendant's principal argument is that the evidence may have established that he received stolen property but not that he stole it because (1) the theft had occurred at the Hyde Park station or (2) even if the theft occurred at Fusco's station, only Malone stole the gasoline. The District Judge wished to give the Government's aiding and abetting instruction # 6 pursuant to Section 2(a) of the Criminal Code (18 U.S.C. § 2(a)), but the defendant objected thereto and the instruction was withdrawn by the Government.

The Government explained that its theory was that Fusco participated in the actual theft of the gasoline "because the theft was perpetrated on his property with his consent and it was being perpetrated as the gasoline was being poured into his reservoir * * *." Over the defendant's objections, the District Court then gave Government instruction # 5 providing as follows:

> "I tell you that it is the law that every person who willfully participates in the commission of a crime may be found guilty of that offense. A defendant need not personally perpetrate every act constituting the offense charged in the indictment in order to be found guilty of the commission of that offense."

This instruction is substantially Section 3.01 of the La Buy criminal instructions in effect in this Circuit. See 33 F.R.D. 523, 544.

The Government states that since the Hyde Park station was on Mobil's consignment plan, the 8,000 gallons of gasoline delivered by Malone and the 470 gallons remaining in the delivery truck were all owned by Mobil. From this, the Government's brief concludes that "Malone did not appropriate the [470 gallons of] gasoline *from the Hyde Park Station* by not delivering the gasoline there" (emphasis supplied). But that is not the crime charged in the indictment. The crime charged was Malone's (and Fusco's) theft of the 470 gallons from Mobil's tank wagon. The relationship between Mobil and the Hyde Park station as to the ownership of the 8,000 gallons of gasoline delivered there is entirely irrelevant. The critical question is whether Malone stole the 470 gallons from Mobil by not delivering them to the Hyde Park station in accordance with its order.

It is plain from Malone's testimony that he stole the Mobil-owned 470 gallons of gasoline at the Hyde Park station. It was there that he decided not to crank the meter to release the delivery tickets. To cloak his conversion, he deliberately left the tickets in the meter and proceeded immediately to Fusco's station to dispose of the gasoline in accordance with his past practice of doing so two or three times a week over a three-month period.

On the basis of prior opinions applying Section 659 of the Criminal Code, it is clear that the theft was committed at the Hyde Park station. The first paragraph of that Section provides penalties for:

> "Whoever embezzles, steals, or unlawfully takes, carries away, or conceals, or by fraud or deception obtains from any * * * vehicle * * * with intent to convert to his own use any goods * * * which constitute an interstate * * * shipment of * * * property * * *."

Although the Government argues that the commission of Malone's theft did not take place until the gasoline was removed from the truck at Fusco's station, in United States v. De Normand, 149 F. 2d 622, 624 (2d Cir. 1945), certiorari de-

nied, 326 U.S. 756, 66 S.Ct. 89, 90 L.Ed. 454, Judge Swan pointed out that the purpose and the language of the statute require a broad construction covering unlawful constructive possession. Here Malone took possession for his own purposes at the Hyde Park station.

In United States v. Padilla, 374 F.2d 782 (2d Cir. 1967), the defendant, like the Government here, contended that to establish a violation of the above provision it was necessary for the Government to show that he physically removed two pairs of women's slacks from the truck in which they were being transported. However, the Court concluded that the theft or unlawful taking under Section 659 was complete when Padilla reduced the slacks to his possession and control with the intent to convert them to his own use. In this case, Malone purposely left the delivery tickets in the meter after he had acquired dominion over the 470 gallons of gas with a view to disposing of them later, thus evidence of "his intent to convert [these gallons] to his own use and of the completion of the crime" at the Hyde Park station (374 F.2d at p. 784).

In *Padilla*, the Court construed the *De Normand* case as holding that the crime proscribed by Section 659 was committed without the physical removal of the goods from the vehicle; it held as follows (at pp. 784–785):

"However, the phrase 'from any * * * motortruck' as used in the context of the statute does not, as Padilla contends, require that the goods be physically removed from the vehicle—that is to say actually taken out of it—before the crime of theft or

unlawful taking from interstate commerce can occur. While the preposition 'from' may be used to indicate physical removal or asportation it is not so used here. An ordinary and usual meaning of 'from' is to indicate a starting point. Webster's International Dictionary 1012 (2d ed. 1953); The Shorter Oxford English Dictionary 754 (3d ed. 1955). That is the sense in which it is used in § 659—to indicate the facility in which the theft or taking from interstate commerce must initiate in order to have the statute apply."

The Second Circuit also observed that Padilla's construction would do violence to other language in Section 659, for a requirement of actual removal from the facility would not apply to the statutory phrase "conceal from * * * any motortruck" unless "from" is read, in accordance with that Court's conclusion, as merely indicating the start of the act charged, namely, the facility in which the goods were located when the act began. The construction of "from" sought by the Government would reduce the scope of Section 659. Over the long run, this would work a greater interference with effective enforcement of this kind of interstate commerce offense than would the reversal of this conviction.

■■ We adhere to the construction of Section 659 adopted in the *De Normand* and *Padilla* cases [1] and conclude that in accordance with Malone's testimony, the theft of the 470 gallons of gasoline occurred at the Hyde Park station, so that Fusco could not have participated in the theft within the above-quoted Government instruction # 5.[2] Al-

1. United States v. Budge, 359 F.2d 732, (7th Cir. 1966), is not *contra*, for there this Court did not focus on or decide when the embezzlement of the cartons of shoes first occurred.

2. As noted in the Comments to the American Law Institute's Model Penal Code, Tentative Draft No. 1 (1953), a theft becomes complete as soon as a person exerts unauthorized control over property

of another with the purpose of depriving the owner thereof. As there stated (at p. 65):

"It is not necessary that the actor have gone far enough to gain unhindered control. Appropriation is not to be tested by mechanical rules such as characterized common law larceny. Particularly 'caption,' in the sense of undisputed physical control, and 'asportation,' i. e., removal of the object from

though it is arguable that the jury could have found Fusco guilty as an aider and abettor, the District Judge reluctantly refused to give an aiding and abetting instruction after being so importuned by both parties. Therefore, we need not consider whether Fusco's conviction can be sustained as an aider and abettor.

The second paragraph of Section 659 punishes receivers in the following terms:

"Whoever buys or receives * * * any such goods or chattels, knowing the same to have been embezzled or stolen * * *."

We agree with defendant that the evidence may have shown that he was guilty of such a crime, but it does not show that he participated in the theft that had already occurred before Malone arrived at Fusco's service station. The first and second paragraphs of Section 659 charge separate crimes, one for theft and one for receiving. United States v. Dolasco, 184 F.2d 746, 749 (3d Cir. 1950).[3] Unfortunately for the Government, this indictment did not charge Fusco as a receiver of stolen goods but only as a thief. The Government may now decide to seek to reindict him as a receiver in connection with each of his transactions with Malone.

In sum, Fusco was tried as a participant in a theft at his service station. The theft had already taken place at the Hyde Park station.[4] Since he was not indicted as a receiver of stolen goods, the conviction cannot stand. The other errors raised by Fusco need not be considered.

The judgment is reversed.

---

its former location, are not requisites of appropriation."
Under these tests and the examples there given (at pp. 65–66), the theft of 470 gallons of gasoline occurred prior to Malone's arrival at Fusco's station.

3. As the Comment to the Model Penal Code, Tentative Draft No. 2 (1954), shows, receiving stolen property was a "traditionally distinct crime" from theft (p. 93). This distinction was formerly recognized in Illinois. See People v. Hinkle, 408 Ill. 533, 535, 97 N.E.2d 837 (1951). Under Section 16–1(d) of the 1961 Illinois Criminal Code, receiving stolen goods is now made a species of theft. (See Smith-Hurd Illinois Annotated Statutes, Ch. 38, Sec. 16–1; and Committee Comments, p. 7.) Section 223.1 of the American Law Institute's Model Penal Code (1962 Draft) also makes receiving a species of theft. However, Congress has not combined the two crimes and we cannot treat them as one and the same.

4. If the theft had taken place at Fusco's station, Fusco's activities after Malone's arrival there would have supported the guilty verdict pursuant to Government instruction #5.