**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Shon BROOKINS, Defendant–Appellant.**

No. 94–1918.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 20, 1995.

Decided April 4, 1995.

James A. Shapiro, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Cr. Div., and Barry Rand Elden, Asst. U.S. Atty., Office of the U.S. Atty., Cr. Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

Stuart K. Jones (argued), Chicago, IL, for defendant-appellant.

Before POSNER, Chief Judge, FLAUM, Circuit Judge, and McDADE, District Judge.[*]

McDADE, District Judge.

After a bench trial, Shon Brookins ("Brookins"), appellant, was convicted under 18 U.S.C. § 659 for breaking into, stealing or unlawfully taking, carrying away or concealing a camcorder from baggage in interstate shipping and under 18 U.S.C. § 371 for conspiracy to commit that offense. Brookins

appeals his conviction claiming that the government failed to prove him guilty beyond a reasonable doubt. Finding no merit in any of Brookins' claims, we affirm his conviction.

## BACKGROUND

Brookins' conviction arises out of the Federal Bureau of Investigation's ("FBI") "Operation Rampcheck," an undercover investigation of theft by baggage handlers in the airline industry. Working undercover, Special Agent Norman Embry ("Embry") worked as a baggage handler for Dynair Maintenance Corporation which transports baggage from international flights to connecting domestic flights at O'Hare Airport.

On September 10, 1989, Embry and Brookins delivered baggage from the international terminal to connecting domestic flights at the United Airlines terminal. Embry commented to Brookins that a certain piece of baggage appeared to contain expensive camera equipment. According to Embry, the tag on this bag indicated that it came from an international flight connecting to a United domestic flight. After Embry's comment, Brookins went over to get a closer look at the bag. Brookins then pushed the bag back on the truck rather than unloading it at the United terminal.

After unloading the remaining baggage for United Airlines, Embry and Brookins returned to the truck and drove to the Delta Airlines baggage belt. The Delta baggage area is more secluded than the other baggage areas. At the Delta area, Brookins opened the bag—for a closer inspection— exposing a Panasonic video camera. Brookins closed the bag, left it on the truck, and he and Embry drove back to the international baggage area.

Back at the international baggage area, Embry activated a tape recorder hidden on his body and recorded a conversation between Brookins, Bobby Morgan (a co-worker and an unindicted co-conspirator named in the Indictment), Mike White (a co-worker and unindicted co-conspirator not named in the Indictment), and himself. Morgan of-

* Hon. Joe Billy McDade of the Central District of Illinois.

fered to sell Embry the Panasonic video camera—which Brookins took from its intended destination at the United terminal—for $350. Embry made a counter-offer for $300. In response, Morgan stated that such cameras sell for $600 "straight up," and that the camera was brand new. Embry offered $325. Nevertheless, Morgan refused to accept anything less than $350, and Embry eventually agreed to that price.

Subsequently, Brookins indicated that he knew people who would pay, at least, $400 for the camera. Brookins stated that he could trade the camera for "dope or money or both." Embry understood Brookins' comment to mean that Brookins was competing with him to raise the negotiated price of the camera and that Brookins would sell the camera to drug dealers if Embry refused to meet that price. After this conversation, Morgan put the camera into his personal gym bag and placed the bag into the cab of the truck he was driving.

Later that day, Embry recorded a conversation between Mike White and himself. White told Embry that "Nick," a Dynair supervisor who was not a member of the conspiracy, questioned Brookins and White about Morgan's gym bag containing the stolen camera. Nick asked Brookins if the bag was his. At first, Brookins stated that the bag did not belong to him. By shaking his head as a form of a signal, however, White indicated that Brookins should claim that it was his bag. Brookins then changed his answer and stated that he owned the bag. White explained that he thought that if Brookins continued to deny ownership, Nick would check the bag catching Brookins and Morgan with the stolen camera. Except for two instances during this transcribed conversation, White refers to a person named "John" rather than "Shon"—Brookins' first name.[1] Embry testified at trial that even though the tape sounded like "John,"—and

he transcribed it as it sounded—White was actually referring to Brookins.

On May 21, 1992, the Grand Jury returned a four-count Indictment charging Brookins with stealing goods from baggage at O'Hare. On August 10, 1992, having waived his right to a jury trial, Brookins' bench trial began. At the beginning of the trial, the United States moved to dismiss Counts Three and Four.[2] This motion was granted. Therefore, Brookins was tried on conspiring to steal a Panasonic video camera from baggage at O'Hare, in violation of 18 U.S.C. § 371, and breaking into and stealing a Panasonic video camera from baggage in violation of 18 U.S.C. § 659. On August 11, 1992, the court found Brookins guilty on both charges. Apparently, the district judge was not requested to find the facts specifically pursuant to Rule 23(c) of the Federal Rules of Civil Procedure. However, the district judge did make the following factual findings:

> The Court finds as a matter of fact that there is a sufficient basis to believe on the basis of the negotiations and the conversation about the newness of the camcorder and its condition and its value that it was in excess of $100 and that it was in the possession of a common carrier, and it was part of the conspiracy that Brookins did take the camcorder and they did agree to—and negotiated to dispose of it.
>
> And in addition to that, the Court finds that the overt acts necessary to be proven were proven and so the defendant is found guilty . . .

On January, 5, 1993, the court sentenced Brookins to two months in prison followed by two years of supervised release.

## ANALYSIS

Brookins challenges the sufficiency of the evidence leading to his conviction for conspiring to steal from interstate baggage under 18 U.S.C. § 371, and breaking into and stealing

---

1. The Court notes that the transcript sometimes spells Brookins' first name as "Sean" which has the same pronunciation as "Shon." The trial transcript spells Brookins' first name as "Shawn." Brookins has not challenged these different spellings as referring to someone other than himself.

2. Count Three charged Brookins with breaking into and stealing an RCA video camera from interstate baggage in violation of 18 U.S.C. § 659. Count Four charged Brookins with receiving and having in his possession a semi-automatic pistol stolen from interstate baggage in violation of 18 U.S.C. § 659.

from interstate baggage under 18 U.S.C. § 659. Brookins asserts that the evidence was insufficient to establish (1) that the value of the camera exceeded $100, the minimum statutory amount to support a felony conviction under 18 U.S.C. § 659; (2) that he had dominion and control over the camera as required by 18 U.S.C. § 659; and (3) that he conspired to steal a camera in violation of 18 U.S.C. § 659 and 18 U.S.C. § 371. Brookins also contends that his conviction for conspiracy under 18 U.S.C. § 371 should be reversed because the trial court improperly admitted an alleged co-conspirator's hearsay statement implicating Brookins in the conspiracy.

## A. SUFFICIENCY OF THE EVIDENCE

 The proper standard of review for a claim regarding the sufficiency of the evidence is "[viewing] the evidence in a light most favorable to the government, we must determine whether a rational trier of fact could have found beyond a reasonable doubt, the essential elements of the crime charged." *United States v. Williams*, 31 F.3d 522, 525 (7th Cir.1994) (citing *United States v. Donovan*, 24 F.3d 908, 913 (7th Cir.1994)). "We will not reweigh the evidence or reassess the credibility of witnesses, but will overturn a conviction '[o]nly when the record contains no evidence regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.'" *United States v. De-Corte*, 851 F.2d 948, 952 (7th Cir.1988) (quoting *United States v. Redwine*, 715 F.2d 315, 319 (7th Cir.1983)). Our inquiry is limited to whether a fact finder could determine that the evidence establishes guilt beyond a reasonable doubt. *United States v. Briscoe*, 896 F.2d 1476, 1504 (7th Cir.), *cert. denied sub nom., Usman v. United States*, 498 U.S. 863, 111 S.Ct. 173, 112 L.Ed.2d 137 (1990). Therefore, every reasonable hypothesis of innocence need not be excluded nor does guilt need to be the only reasonable conclusion. *United States v. Duarte*, 1 F.3d 644, 649 (7th

Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 724, 126 L.Ed.2d 688 (1994).

### 1. *The Value of the Camera*

 Brookins asserts that the United States failed to establish that the value of the camera was $100.[3] Under section 659, a defendant may only be convicted of a felony if the value of the stolen property is, at least, $100. If the value of the property is less than $100, a defendant may only be convicted of a misdemeanor. Under section 659, "value" is defined as "face par or market value, or cost price, either wholesale or retail, whichever is greater." *United States v. Ditata*, 469 F.2d 1270, 1273 n. 3 (7th Cir.1972). In *Ditata*, this Court considered 18 U.S.C. § 641—containing a value requirement similar to section 659—to define value within the meaning of section 659. *Id.* at 1273. Subsequently, this Court held that the definition of "market value" employed in 18 U.S.C. § 2311 "is equally applicable to § 641." *United States v. Oberhardt*, 887 F.2d 790, 793 (7th Cir.1989). Therefore, referring to cases defining "value" under 18 U.S.C. § 641 and 18 U.S.C. § 2311 is appropriate for defining "value" under section 659.

 This Court measures the "market value" of stolen goods as "the price a willing buyer will pay a willing seller either at the time and the place the property was stolen or at any time during the receipt or concealment of the property." *United States v. Bakken*, 734 F.2d 1273, 1278 (7th Cir.1984). Furthermore, the Court allows the use of a "thieves' market" as "an appropriate method for determining the 'market value' of [stolen] goods ..." *Oberhardt*, 887 F.2d at 792.

In this case, the evidence is more than sufficient to establish that the value of the camera was greater than $100. Here, Morgan—one of Brookins' co-conspirators—initially offered to sell the camera to Embry for $350.[4] When Embry counter-offered for the

---

**3.** Because the camera was never recovered, it was not part of the evidence before the trial court. Embry testified that the last time he saw the camera was after the negotiations for its sale. Embry "saw Bobby Morgan place the camcorder inside his personal gym bag or duffle bag and

then he placed the bag containing the camcorder inside the cab of the truck he was driving."

**4.** If, however, Embry initiated the negotiations as to the value of the camera, the outcome may have been different. *See United States v. Alberico*, 604 F.2d 1315, 1321 (10th Cir.) (A govern-

lesser amount of $300, Morgan rejected the counter-offer stating, "[t]hey will go for six straight up, this is brand new to [sic]." Apparently, Morgan was indicating that on the legitimate market, similar new cameras were worth $600. Finally, Morgan indicated that the lowest price he was willing to sell the camera for was $350. The trial court could properly determine that this statement by one of the thieves as to the value a willing buyer in a thieves' market would pay satisfied the $100 value requirement for felonies under section 659. We hold that this was sufficient evidence to establish that the value of the camera was greater than $100.

In addition, Brookins contends that an important factor for determining the value of a stolen good is whether it is in working order. *See United States v. Shackelford*, 709 F.2d 911, 913 (5th Cir.), *cert. denied*, 464 U.S. 899, 104 S.Ct. 253, 78 L.Ed.2d 239 (1983). Brookins asserts that the government failed to prove that the camera was in working order. Consequently, Brookins contends that the evidence is insufficient to show that the value of the camera was $100. Brookins' contentions are without merit. During the course of the negotiations for the sale of the camera, Morgan explicitly stated that the camera was "brand new." Furthermore, the camera was stolen from a flight returning from an international destination. From this information, the trial court could properly infer that the camera was in working order. Therefore, Brookins' challenge to the sufficiency of the evidence regarding the value of the camera fails.

### 2. *Possession of the Camera*

■ The first four paragraphs of section 659 are written in the alternative and charge separate crimes. *See United States v. Maverick*, 601 F.2d 921, 925 (7th Cir.1979). The first and third paragraphs of section 659 define theft offenses and "punish[ ] the unlawful taking of another's property." *Id.* The second paragraph involves a "receiving and possession offense, a crime traditionally regarded as separate from theft." *Id.* The fourth paragraph involves offenses of theft by fraud and receiving and possession of stolen goods. In this case, Brookins was charged under the third paragraph of section 659, involving theft from baggage which is being transported in interstate commerce.[5]

■ The theft or unlawful taking prohibited by the third paragraph of section 659 consists of reducing the stolen goods to the possession and control of a defendant who intends to convert the goods to his own use. *See United States v. Fusco*, 398 F.2d 32, 35 (7th Cir.1968); *see also United States v. Padilla*, 374 F.2d 782 (2d Cir.1967). Consequently, the theft is "complete as soon as a person exerts unauthorized control over property of another with the purpose of" converting the property to his own use. *Fusco*, 398 F.2d at 35 n. 2. Physical removal of the goods is not required nor is "asportation in the common law larceny sense."[6] *United States v. Faulkner*, 638 F.2d 129, 130 (9th Cir.1981); *accord Fusco*, 398 F.2d at 35.

Brookins asserts that the facts of this case do not establish that he had the necessary dominion and control required to satisfy section 659. Brookins relies on the requirement that "dominion must not be 'a passing control, fleeting and shadowy in nature,' but rather actual control." *United States v. Par-*

---

ment agent's offered price for a stolen item may not be used to establish its value in a thieves market when the agent "admitted [that] he had no idea what value the [items] might have had in a true underworld exchange."), *cert. denied*, 444 U.S. 992, 100 S.Ct. 524, 62 L.Ed.2d 422 (1979).

**5.** The third paragraph of section 659 provides:

Whoever embezzles, steals, or unlawfully takes, carries away, or by fraud or deception obtains with intent to convert to his own use any baggage which shall have come into the possession of any common carrier for transportation in interstate or foreign commerce, or

breaks into, steals, takes, carries away, or conceals any of the contents of such baggage, or buys, receives, or has in his possession any such baggage, or any article therefrom of whatever nature, knowing the same to have been embezzled or stolen.

18 U.S.C. § 659.

**6.** "Larceny, as defined in the common law, generally consists of the taking and carrying away of the personal property of another with the intent to deprive the owner of his property permanently, and to convert the property to the use of someone other than the owner." *United States v. Waronek*, 582 F.2d 1158, 1161 (7th Cir.1978).

*ent,* 484 F.2d 726, 732 (7th Cir.1973), *cert. denied,* 415 U.S. 923, 94 S.Ct. 1427, 39 L.Ed.2d 479 (1974).[7] The facts of this case establish that Brookins had more than "a passing control, fleeting and shadowy in nature" over the camera. As shown by the record, the facts establish that Brookins had actual control over the camera. Brookins pushed the bag containing the camera—which was tagged for a United domestic flight—back onto the truck at the United belt after Embry stated that the bag appeared to contain expensive camera equipment. Next, Brookins and Embry drove to the Delta baggage belt which is more secluded. Brookins then opened up the bag at the Delta belt and discovered a Panasonic video camera. Brookins placed the bag back onto the truck, and he and Embry drove back to the international baggage area rather than to the designated United Airlines terminal.

■ Brookins claims that these facts fail to establish that he exercised any dominion or control over the camera because "there are any number of explanations for diverting the camcorder from the United area that are consistent with a lawful purpose."[8] Brookins, however, fails to bear in mind the applicable standard of review. The Court must view the evidence in the light most favorable to the government to determine whether the evidence was sufficient to sustain Brookins' conviction. Under this standard, the Court may not usurp the trial court's function as the finder of fact and re-analyze the evidence in the light most favorable to the defendant.

*DeCorte,* 851 F.2d at 953. Consequently, the Court must determine—viewing the evidence in a light most favorable to the government—whether the evidence was sufficient to convict Brookins for theft under section 659. We hold that the evidence is sufficient.

As shown by the evidence, Brookins exercised dominion over the camera when he pushed the bag back on the truck instead of leaving it at the United belt to be placed on the domestic flight. Furthermore, Brookins reduced the camera to his possession and control with the intent to convert it to his own use when he opened up the bag, saw the camera, and took the camera with him to the international terminal rather than the United Airlines terminal as required. At that time, the theft or unlawful taking of the camera under section 659 was complete, regardless of the fact that later Brookins and his partner in crime negotiated a sale of the camcorder.[9] Therefore, Brookins' conviction under section 659 for the theft or unlawful taking of the camera was proper.

### 3. *Conspiracy to Steal the Camera*

■ Brookins claims that the evidence is insufficient to support his conspiracy conviction. In order to prove a conspiracy, the government must show the existence of an agreement to commit a criminal act, the defendant knew about the agreement, and the defendant intended to join the agreement. *United States v. Smith,* 995 F.2d 662, 666 (7th Cir.1993), *cert. denied sub nom., Marren v. United States,* —— U.S. ——, 114

7. The Court notes that this case involved a conviction under the second paragraph of section 659 for possession rather than theft.

8. In his reply brief, Brookins provides two new arguments as to why the evidence is insufficient. Brookins contends that the evidence is insufficient to show dominion and control because the government failed to establish that Brookins was driving the truck at the time the camera was taken. In addition, Brookins asserts that the evidence is insufficient to establish that Brookins took the camera with the requisite intent to convert it to his own use. These issues are waived. *Graff v. City of Chicago,* 9 F.3d 1309, 1318 n. 6 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1837, 128 L.Ed.2d 464 (1994). Rule 28(f) of this Circuit's Appellate Rules requires that "[a] reply brief shall be limited to matter in reply." 7th Cir.R. 28(f). Even so, as discussed *infra,*

regardless of who drove the truck, Brookins' actions clearly are sufficient to show dominion and control over the camcorder and the requisite criminal intent.

9. Brookins argues that the evidence before the trial court contradicted Embry's statement that the camera taken from the United area was the same camera that was subsequently negotiated for sale. This argument is irrelevant as to this issue because the crime under section 659 was completed prior to these negotiations. This argument, however, is considered below as to Brookins' conviction for conspiracy under section 371. Likewise, Brookins' argument regarding the conversation between White and Brookins—which will be discussed below—is irrelevant because the crime was complete prior to that conversation.

S.Ct. 718, 126 L.Ed.2d 683 (1994). The government may prove a defendant's participation in a conspiracy by using circumstantial evidence. *Id.*

At trial, the court concluded that a conspiracy existed and Brookins was a participant. The court based this conclusion on its finding that Brookins took the camera as a part of the conspiracy and the conspirators "negotiated to dispose of it." The evidence supports the trial court's conclusion. Embry testified that the camera he was negotiating to buy from Morgan was the same camera that was taken by Brookins. In addition, the evidence established that Brookins was present during the negotiations for the camera. Furthermore, Brookins participated in these negotiations by stating that he could get a higher price than that offered by Embry from drug dealers living near him. Finally, a tape recorded conversation between Embry and White—an unindicted co-conspirator—established that Brookins lied about the ownership of Morgan's gym bag which contained the camera to prevent the discovery of the conspiracy. A particularly pertinent portion of this conversation provides, "[t]hen I [White] told Sean that if you said no [in response to being asked by Nick, the Dynair supervisor, whether he owned the gym bag] he [Nick] was gonna go check that mother fucker and you and Bobby [Morgan] woulda got caught . . ."

Disregarding the proper standard of review, Brookins seeks to reargue or, at least, put a different slant on these facts. Brookins alleges that the evidence is insufficient to prove a conspiracy because the evidence fails to establish that the camera he allegedly stole was the same camera that Morgan offered to sell to Embry. Furthermore, Brookins insists that, even though he was present during the negotiations, he was only a bystander and was not part of the conspiracy. *See United States v. Quintana,* 508 F.2d 867 (7th Cir.1975). Brookins also claims that any comments that he made during the negotiations were irrelevant and were simply in the nature of "braggadoccio." Brookins further alleges that the evidence concerning the alleged conversation between White and himself is unreliable because Embry was not present during the conversation and, except for two instances in the transcript, White refers not to Brookins but to someone named "John."

As stated above, "it is not the role of an appellate court to reexamine credibility determinations or reweigh the evidence." *DeCorte,* 851 F.2d at 952. If a trial judge's finding is based on a decision to credit the testimony of a witness, who "has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding if not internally inconsistent, can virtually never be clear error." *Id.* at 953. In this case, Embry testified that the camera involved in the negotiation was "the same Panasonic camcorder that was removed from the United baggage belt area." Embry also testified that Brookins was present during these negotiations. In addition, Embry indicated that Brookins stated that he could trade the camera "with drug dealers for drugs or money or both." Embry understood this statement to mean that Brookins "was competing with [Embry] to up the price or if I don't give him the right price, then he can take the camcorder himself and sell it to drug dealers." In reference to the transcript of the tape that referred to someone named "John"—except for two instances where "Sean" is named, Embry testified that White "couldn't have been referring to anyone else but Shawn."

The trial judge found that Embry's testimony was credible. Because there is no inconsistency between the evidence and Embry's testimony, the Court will not second guess the findings of the trial court. We hold that this evidence was sufficient for the trial judge to find beyond a reasonable doubt each element necessary to prove a conspiracy; i.e., an agreement existed to steal and sell goods from interstate shipments, that Brookins was aware of the agreement, and that Brookins joined the agreement.

### B. ADMISSIBILITY OF CO–CONSPIRATOR'S STATEMENT

Brookins contends that his conviction for conspiracy should be reversed because the trial court improperly admitted an

alleged co-conspirator's hearsay statement implicating Brookins in the conspiracy. At the outset, the Court finds that Brookins did not object to the admission of this statement at trial. An issue is waived on appeal if the party failed to raise the issue before the trial court. *United States v. Maholias,* 985 F.2d 869, 877 (7th Cir.1993). As a result, our review is for plain error. *Id.* This Court will "reverse for plain error only when convinced that it is necessary in order to avert an actual miscarriage of justice." *Id.*

 Under Rule 801(d)(2)(E) of the Federal Rules of Evidence, a hearsay statement is admissible if the statement was "made by a co-conspirator during the course and in furtherance of the conspiracy." *United States v. Boucher,* 796 F.2d 972, 974 (7th Cir.1986). For a hearsay statement to be admitted under this rule, the government must prove, by a preponderance of the evidence, the existence of a conspiracy, that both the defendant and the declarant were members of that conspiracy, and "that the offered statement was made during the course and in furtherance of the conspiracy." *United States v. Hooks,* 848 F.2d 785, 794 (7th Cir.1988). Furthermore, the content of the hearsay statement may be considered to determine its admissibility under Rule 801(d)(2)(E); independent corroborating evidence of the conspiracy and the defendants participation in it is not necessary. *Id.* at 796.

Brookins contends that the government failed to provide reliable evidence that Brookins was a member of the conspiracy. As stated above, however, the Court concluded that there was sufficient evidence showing that Brookins was a member of the conspiracy. Therefore, we need not re-visit this issue. Furthermore, White's statements were made during the course and in furtherance of the conspiracy. White's statements revealed that he and Brookins were acting in furtherance of the conspiracy because they were seeking to avoid detection of the conspiracy to steal the camera. Consequently, the trial court did not err by admitting White's statements under Rule 801(d)(2)(E).

For the foregoing reasons, the decision of the trial court is

AFFIRMED.