**BOUSHEA et al. v. UNITED STATES.**

No. 13694.

United States Court of Appeals
Eighth Circuit.

March 14, 1949.

Francis J. Murphy, of Fargo, N. D., and George Longmire and Harold D. Shaft, both of Grand Forks, N. D., for appellants.

T. H. Wangensteen, Asst. U. S. Atty. and John W. Graff, U. S. Atty., both of St. Paul, Minn., for appellee.

Before GARDNER, Chief Judge, and RIDDICK and STONE, Circuit Judges.

GARDNER, Chief Judge.

Appellants were convicted under an indictment which charged that they caused to be made and presented for payment and approval a certain false claim and caused to be made and used a certain false certificate, which claim and certificate were presented to the Agricultural Conservation Association of Polk County, Minnesota, and to the Commodity Credit Corporation, on behalf of one Evald Lindquist, a potato grower, for reimbursement for deteriorated potatoes which had theretofore been stored in the Cold Storage Potato Warehouse Company owned by the defendant Francis J. Boushea, at East Grand Forks, Minnesota, and which potatoes were mortgaged to the said Commodity Credit Corporation in connection with the potato loan of said Evald Lindquist. Appellants will be referred to as defendants.

The indictment contained a second count charging defendants with a conspiracy to commit the offense charged in count 1.

Defendants interposed a motion to strike certain portions of the indictment as surplusage, which motion was overruled. They also interposed motion for acquittal at the close of the government's case and renewed this motion at the close of the entire case, which motions were denied. At the close of all the evidence the government, on leave of court and with consent of counsel for defendants, dismissed the second count of the indictment.

Defendants seek reversal on the ground that, (1) the court erred in denying their motion to strike portions of the indictment; (2) the court erred in denying their motions for acquittal; (3) the court erred in instructing the jury that although there was no specific requirement in the AAA regulations that the borrower must certify in writing to the Polk County AAA Committee that the potatoes were dumped, there was testimony that it was the practice and custom of that committee to have the borrower so certify in addition to the certificate, including a statement that the potatoes so dumped would not be sold nor used for human consumption.

The indictment charged but one substantive offense and that was the offense of having caused a fraudulent claim to be presented for payment and approval and having caused to be made and used a false certificate as a part of the presentation of the false claim. The statute under which the indictment is drawn, 18 U.S.C.A. § 80 [now §§ 287, 1001], so far as here pertinent, reads as follows: "Whoever shall make or cause to be made or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, or any department thereof, or any corporation in which the United States of America is a stockholder, any claim upon or against the Government of the United States, or any department or officer thereof, or any corporation in which the United States of America is a stockholder, knowing such claim to be false, fictitious, or fraudulent; * * * or make or use or cause to be made or used any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry in any matter within the jurisdiction of any department or agency of the United States or of any corporation in which the United States of America is a stockholder, shall be * * *" punished as the statute requires.

The indictment contained a narrative of the alleged facts and circumstances by which the offense was charged to have been committed. Defendants' motion to strike was directed to such narrated facts. We think the indictment recited much unnecessary matter which might well have been eliminated. However, the facts recited were all proven or at least testified to during the trial and there is no claim that any evidence was improperly admitted. The indictment clearly stated the offense and the recitals relating to the evidentiary matter gave defendants advice as to all claims of the government. The motion did not go to the sufficiency of the indictment and hence, was addressed to the judicial

discretion of the court. The denial of the motion could not, we think, have been prejudicial to the defendants.

■ Defendants challenged the sufficiency of the evidence by motion for judgment of acquittal interposed at the close of all the testimony and they renew that challenge here. As the jury found the defendants guilty, all conflicts in the evidence were resolved against them and we must take that view of the evidence which is most favorable to the government and accept as true all facts which the evidence reasonably tended to prove.

Under the so-called Agricultural Adjustment Act of 1938 as amended, 7 U.S.C.A. § 1281 et seq., there was inaugurated by the United States Department of Agriculture, in connection with the Commodity Credit Corporation, what is known as the 1946 Potato Loan Program. Under that program a potato grower could obtain a loan upon potatoes grown by him upon condition that the potatoes be stored either in a public warehouse or some other suitable place approved by the committee. Pursuant to that program or plan, one Evald Lindquist stored certain potatoes with the Cold Storage Potato Warehouse Company operated by defendant Francis J. Boushea. These potatoes were stored in three bins, referred to in the record as Bins 1170-P, 1171-P and 1172-P. A loan of $3436.44 was accordingly granted to him, which loan was evidenced by a note and a chattel mortgage, the loan being guaranteed by the Commodity Credit Corporation. These bins were sealed in such a way as to indicate that they were subject to a government loan. Under provisions of the program the borrower could sell the potatoes on the open market or to the government and thus pay the loan. The loans on the potatoes in Bins 1171-P and 1172-P were paid, and we are here concerned only with the loan on Bin 1170-P.

There was a further provision in the program which granted permission to the borrower upon certain conditions, to dump the potatoes subject to the loan if after inspection the potatoes were found to be of low grade or had deteriorated to such an extent that under the Act and the regulations promulgated thereunder, they could be certified for dumping. If such permission were granted the potatoes were to be dumped in accordance with the provisions of the Act and due proof made of such dumping, and thereupon the borrower would obtain credit on his loan for the basic value of the potatoes. Under this procedure it was not only necessary that the potatoes be dumped but that the borrower certify that the potatoes so dumped would not be used for human consumption nor sold, except under certain conditions not here material. If the borrower thought the potatoes had deteriorated or were otherwise subject to the provision for dumping, it was incumbent upon him to file such a request with the local Agricultural Committee in the county where the potatoes were stored, and thereupon the potatoes were inspected and if found suitable for dumping then the potatoes would be taken out of the bin to some designated dumping place. In the instant case the practice was that upon the dumping order being issued the potatoes would be dumped at any suitable place and thereupon the borrower would make a certificate as to the fact of the dumping and the place of the dumping, including in the certificate a statement to the effect that the potatoes would not be sold nor used for human consumption. The practice was to accept the grower's word for the fact that the potatoes had been dumped and to rely on his certificate, unless there were circumstances which would not justify such reliance.

Defendant Boushea spoke to Lindquist about the potatoes in Bin 1170-P being below grade and suggested that he try to secure a dumping order, and this in due course Lindquist secured. Boushea assured Lindquist that he would take care of the dumping as soon as the order had been obtained and Boushea arranged with defendant Fontaine as to the place, means and manner of dumping. Boushea assured Lindquist that the potatoes were being dumped at the dump grounds in East Grand Forks, Minnesota, although they were not so dumped but a substantial part of the potatoes was cached, under instructions of the defendants, on the Fontaine farm. The rest of the potatoes, under instructions of

the defendants, were graded and sold to the Farmers Cooperative Marketing Association for the sum of $1209.34. The defendants participated in the sorting, sacking and selling of the dumped potatoes. Lindquist, relying upon and believing the statement made by Boushea that the dumping of the potatoes had been completed and the potatoes actually dumped on the dumping grounds in East Grand Forks, Minnesota, was induced by reason of such representations to make the certificate to the effect that the potatoes had been dumped and that they would not be used for human consumption nor sold, and thereafter he made a claim for credit on his government loan by reason of the potatoes being dumped, and the credit was accordingly allowed. The certificate so prepared and presented, while believed by Lindquist to state the truth, was in fact untrue, false, fictitious and fraudulent. If, therefore, the defendants caused this fraudulent claim to be made and presented they were guilty as charged in the indictment and as found by the jury.

■ Lindquist was the innocent person through whom the defendants acted. Whatever they caused him to do they were responsible for, and anyone who aids, abets or assists in committing an unlawful act is as guilty as the principal. The defendants were not mere aiders and abetters, however. They were the principals acting through an innocent agent. As said in United States v. Gooding, 12 Wheat. 460, 6 L.Ed. 693:

"It is a known and familiar principle of criminal jurisprudence that he who commands or procures a crime to be done, if it is done, is guilty of the crime, and the act is his act. This is so true that even the agent may be innocent when the procurer or principal may be convicted of guilt, as in the case of infants or idiots employed to administer poison."

It was the manifest plan and purpose of the defendants to appropriate these potatoes to their own use, which they succeeded in doing. In order to accomplish this purpose, using Lindquist as a tool, they caused him to make and present a false and fraudulent claim to a government agency. It is argued that the defendants had nothing to do with the actual preparation, signing or filing of the false certificate and that they did not know that any such certificate was required to be filed. It is also argued that the claim or certificate contained statements which were not required by any law. Whether required by law or not, the recitals were false in so far as they stated that the potatoes had actually been dumped. That statement was with reference to an alleged fact. Coupled with it was the statement that the potatoes would not be sold nor used for human consumption. It is said of this statement that it was not a representation as to an existing fact or past event, but was something to take place in the future. The fact that this last representation was with reference to something that might transpire in the future did not detract from the other false statements with reference to alleged existing facts, and where several false pretenses are made and some of them refer to existing facts while others refer to future events, a conviction may still be had where it appears that any of the representations as to existing facts induced action. This statement with reference to the fact that the potatoes would not be sold nor used for human consumption was not in the nature of a promise because the other recitals showed that the potatoes had passed from the control of the producer and had been dumped "at the dump grounds in East Grand Forks, Minnesota." If we view the statement with reference to the future use of the potatoes as an opinion, this is to be attributed to the defendants, and they knew that that statement was false and as to them this was a statement of an existing fact made contrary to what they knew to be the truth. As said by the Court of Appeals of the Second Circuit in United States v. Zavala, 139 F.2d 830, 831:

"Whether or not the vicarious amendment of the declaration was not technically in accord with the Tariff Act, it is evident that the defendant thereby caused a false representation to be made to customs authorities and thus violated Section 80 of Title 18."

■ The Supreme Court in United States v. Gilliland, 312 U.S. 86, 61 S.Ct. 518, 522, 85 L.Ed. 598, referring to the

scope of the statute now under consideration, among other things said:

"The statute was made to embrace false and fraudulent statements or representations where these were knowingly and willfully used in documents or affidavits 'in any matter within the jurisdiction of * * * the United States'. In this, there was no restriction to cases involving pecuniary or property loss to the government. The amendment indicated the congressional intent to protect the authorized functions of governmental departments and agencies from the perversion which might result from the deceptive practices described. We see no reason why this apparent intention should be frustrated by construction."

 Defendants were engaged in the unlawful act of appropriating these potatoes to their own use. To accomplish their purpose they used Lindquist to do the things that were necessary to enable them to effect that purpose, and they were charged with notice that he would do the things necessary in the matter of filing the claim and they were responsible for the representations made in that claim and may properly be said to have caused it to be filed and presented. As the result of these unlawful acts of defendants, Lindquist secured credit on his government loan, the defendants got the money for the potatoes, the potatoes were sold and used for human consumption, and the government received nothing from its loan.

It remains to consider the contention that the court erred in its instructions to the jury. The instructions of necessity were quite lengthy as the court carefully reviewed all the evidence and the only exception taken at the time the instructions were given is as follows:

"The only portion of the instructions to which we would have any objection is that portion with reference to the practice of the County AAA Committee. It is our position that no practice of the AAA Board can be violated by these defendants without knowledge of that practice on their part."

The court told the jury that while there was no specific requirement in the AAA regulations that the borrower must certify in writing to the Polk County Triple A Committee that the potatoes were dumped, there was testimony that it was the practice and custom of that Committee to have the borrower so certify in addition to the certificate, including a statement that the potatoes so dumped would not be sold nor used for human consumption.

If the statements contained in the certificate were false, they constituted a part of the false claim presented and whether or not the statements are "technically in accord" with the Act or regulations, they constituted false representations. United States v. Zavala, supra.

The other contentions of the defendants have been considered but we think they are wholly without merit. The judgments appealed from are therefore affirmed.