Jack Rex **PIGMAN**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 19282.

United States Court of Appeals
Eighth Circuit.

March 4, 1969.

Rehearing Denied March 18, 1969.

John J. Hanley, of Craig, Woodruff & Hanley, Omaha, Neb., for appellant.

Theodore L. Richling, U. S. Atty., Omaha, Neb., for appellee; Thomas F. Dowd, Asst. U. S. Atty., on the brief.

Before MATTHES, GIBSON and LAY, Circuit Judges.

FLOYD R. GIBSON, Circuit Judge.

The defendant Jack Rex Pigman was jointly indicted and tried with Armand Henry Kellerman and Robert Leroy Ellis on three counts: (I) converting an interstate shipment of meat valued in excess of $100 in violation of 18 U.S.C. § 659, (II) interstate transportation of stolen goods of a value in excess of $5,000 in violation of 18 U.S.C. § 2314, and (III) transporting a stolen tractor trailer in interstate commerce in violation of 18 U.S.C. § 2312.

The United States District Court for the District of Nebraska, Chief Judge

Richard E. Robinson presiding, dismissed Count I against all the defendants at the onset of the trial, and after hearing the Government's evidence, dismissed the remaining charges against defendant Ellis. Counts II and III against Pigman and Kellerman were submitted to the jury, which returned a verdict of guilty on both counts against each. Judgments of conviction were duly entered. Kellerman received a three-year probation and Pigman a sentence of five years on each count, the sentences to run concurrently.

Defendant Pigman challenges the sufficiency of the evidence to sustain his conviction and alleges the District Court erred in allowing him to be convicted as aider and abettor when the alleged principal Ellis was dismissed due to insufficient evidence to warrant a submission of the issue of Ellis's guilt to the jury. Defendant also specifically challenges whether the evidence of his possession and control of the stolen vehicle was sufficient to warrant a submission of the issue of whether he knew the tractor trailer truck to be stolen and caused it to be transported in interstate commerce.

The revealed facts are substantially undisputed. There is no evidence in the record contravening the Government's case. Defendant did not testify. The record discloses that Raymond Call, a truck driver for Glenwood Packing Company of Glenwood, Iowa, was enroute on June 22, 1966, with an interstate shipment of 35,000 pounds of kosher meat. The shipment originating at Glenwood, Iowa, was to be delivered to a concern in Brooklyn, New York. Call left Glenwood at 7:00 p. m. and drove the tractor trailer unit to Omaha, Nebraska, preparatory to departing for his eastern terminus. He parked the tractor trailer unit on N. 16th, near 3rd Street in Omaha, at approximately 8:30 p. m. and proceeded to Smogye's Tavern, where he met his girl friend or common-law wife, Cris Graves, who also went by the name of Call. After having a few drinks they proceeded to the Ace Bar a little after

10 p. m. They saw defendants Pigman and Kellerman at the Ace Bar together.

After a night on the town, Call went to the truck the next morning, checked the seals on the trailer and started for New York. Feeling ill and having forgotten some necessary papers, he decided to temporarily delay his journey. He parked his truck at 13th and Cass in Omaha in a railroad lot about 9 a. m., leaving a duplicate set of keys secreted in the truck. Call proceeded back to the Ace Bar, where he had some drinks and met Cris. During a general conversation Call announced that he was not leaving town but was going to the races. Pigman was in the bar at that time and was close enough to hear Call's conversation. Pigman left the Ace Bar with a Mike Russell, and obtained a ride to the Zebra Lounge, where co-defendant Robert Ellis worked as a bartender. Ellis had been a truck driver. Call left for the race track at 1:30 p. m. and returned approximately at 7 p. m. to meet Cris at Smogye's. They again went out on the town and returned to their abode about 1:30 the following morning. Call did not check the truck during this interval. Call got up at 7 a. m. with a headache and sent Cris out to check on the truck. It wasn't there.

After some investigation a city detective took Call to Locust Street in Carter Lake, Iowa, which is adjacent to Omaha, Nebraska, just across the Missouri River boundary. The truck was there and the seals were broken. This was a refrigerated unit and an independent diesel unit continued to operate the refrigerated trailer. Thus, though some personal items were missing from the cab, the cargo was apparently intact. The truck had been parked about 2:30 or 3 p. m. the previous day, June 23, 1966, between Fifth and Sixth Streets on Locust in Carter Lake, Iowa. Witnesses saw a man in dark work clothes leave the truck and proceed to the Bonanza Bar, located about 100 feet down the street. Sometime later witnesses saw Pigman in the driver's side of the truck attempting to move the tractor trailer unit. Keller-

man was identified as being with him in the truck. Every time Pigman managed to start the truck he killed the engine by attempting to move the trailer without releasing the air brakes on the trailer. After three or four attempts Pigman and Kellerman abandoned their efforts to move the truck and Pigman was observed wiping the dashboard and the steering wheel in an apparent attempt to remove finger prints. They then left the unit and proceeded towards the Bonanza Bar. All three defendants were identified as being together at the Bonanza Bar.

Later that night Pigman returned to Omaha to the apartment of his former common-law wife, Lois, who was now married to Donald Maxwell. Pigman said he was going out for some chicken, and while out he apparently made a telephone call to Willis Halverson, a truck driver, asking Halverson if he would drive a truck for them. Halverson refused. Pigman came back to the apartment and went to sleep on the divan but was awakened when Kellerman stopped by between midnight and 1 a. m. and told him, "We've got to go back there." Pigman replied that he was sleeping and didn't want any part of it because it was a federal offense.

The next morning Pigman asked Lois Maxwell to learn what she could about Ray Call's truck while she was at the laundromat, particularly whether any names were mentioned in connection with the truck. Pigman also remarked to Lois that if he had gotten $2,000, he would have gone to California. Upon inquiry from Lois about why they didn't drive the truck further, Pigman remarked they would have gone further but they ran out of gas. When Lois told Pigman she had heard his fingerprints were found on the truck, he said they were not, but after a pause replied, "Well, if they found my fingerprints on the truck, then I will tell them that I went to borrow something from Ray." When it became known that Lois Maxwell would be called as a witness she was threatened by Kellerman and also Pigman.

Considering the evidence in the light most favorable to the verdict, as we must, the evidence readily supports the verdict. Wood v. United States, 361 F. 2d 802 (8 Cir. 1966), cert. denied 385 U.S. 978, 87 S.Ct. 520, 17 L.Ed.2d 439; Coil v. United States, 343 F.2d 573 (8 Cir. 1965), cert. denied 382 U.S. 821, 86 S.Ct. 48, 15 L.Ed.2d 67.

■■ Pigman designates Ellis as the principal and says that the Government's theory also points to Ellis as the principal. Pigman maintains he cannot be convicted as an aider and abettor since the principal was not convicted. Ellis was an experienced truck driver and was probably the only one of the trio sufficiently knowledgeable to drive a tractor trailer unit. Identification on Ellis was lacking, but this does not relieve Pigman of the consequences of his actions. On the evidence Pigman appears to be the instigator and the principal. But if not the principal, the evidence duly shows him to be an aider and abettor. The principal need not be convicted in order to convict a person as an abettor. As held in Hendrix v. United States, 327 F.2d 971 (5 Cir. 1964) at 975:

"Moreover, since the indictment charged Hendrix as an aider and abettor as well as a principal, there can be even less doubt about the propriety of the jury's finding that Hendrix was guilty of the offense as charged. In order to sustain the conviction of a defendant who had been charged as an aider or abettor, it is necessary that there be evidence showing an offense to have been committed by a principal and that the principal was aided or abetted by the accused, although it is not necessary that the principal be convicted or even that the identity of the principal be established." (Citations omitted.)

No sound reason has been presented why we should nor does justice command us to acquit an accused, proven to be a participant in a crime, because of insufficient evidence against a principal.

The defendant questions (1) whether the evidence was sufficient to show him to be in possession of the stolen truck and (2) whether that possession would be sufficient to warrant the inference that he not only knew the truck to be stolen but caused it to be transported in interstate commerce. He relies on Johnson v. United States, 195 F.2d 673 (8 Cir. 1952), which held at 675 that to be convicted as an "aider and abettor" it must appear that the accused participated in the criminal act in furtherance of a common design, "either before or at the time the criminal act [was] committed" and also required affirmative conduct in furthering the criminal design. Pigman is here placed in possession of the stolen truck in Iowa on the very day it was stolen, just after it had made its interstate journey, and, apparently trying to start and move the vehicle to another destination. This evidence is clearly sufficient to show his dominion over and possession of the stolen truck, and coupled with the other facts proved in the case, of Pigman knowing about the tractor trailer unit, his solicitation of Halverson to drive a tractor trailer unit, his admission to Lois Maxwell showing guilty knowledge of the offense, and his presence with Kellerman at the Maxwell apartment and at the Bonanza Bar, present a sufficiently clear picture of what had transpired to justify the jury in finding Pigman guilty of both offenses. The trial judge properly charged the jury that:

> "And possession in one State of property recently stolen in another State, if not satisfactorily explained, is ordinarily a circumstance from which the jury may reasonably draw the inference and find, in the light of surrounding circumstances shown by the evidence in the case, that the person in possession not only knew it to be stolen property, but also transported it, or caused it to be transported in interstate commerce."

This is an instruction commonly used by federal trial judges and found in Mathes and Devitt, Federal Jury Practice and Instructions, § 10.10, pp. 131–132 (1965). It has been approved repeatedly in circumstances similar in relevant part to the present case. Herman v. United States, 289 F.2d 362, 367 (5 Cir. 1961), cert. denied 368 U.S. 897, 82 S.Ct. 174, 7 L.Ed.2d 93. And in Harding v. United States, 337 F.2d 254, 257 (8 Cir. 1964), we approved a similar instruction which said:

> "The jury might reasonably draw the inference and find, in the light of surrounding circumstances that the person in possession not only knew it to be stolen property but also transported or caused it to be transported in interstate commerce."

Johnson in no way stands in opposition to this since the jury could have inferred from the fact that Pigman was proven to be in possession of goods recently stolen from another state, that Pigman either knowingly transported the stolen vehicle in concert with others or knowingly caused the stolen vehicle to be transported. Even though Pigman might not have sufficient technical knowledge to drive the truck unassisted, he still could be the principal architect of the offense and could "cause it to be transported in interstate commerce.", or he could be an aider and abettor in the offense. This same factual situation could give rise to a permissible inference that Pigman stole the truck and cargo. The possession thus gives rise to two permissible inferences and does not base an inference on an inference, as defendant claims.

The Court's instruction to the jury was proper, and the evidence was clearly sufficient to prove defendant's possession of the stolen vehicle and to enable the jury to infer that defendant at the very least knowingly caused or aided the interstate transportation of stolen goods and the stolen vehicle.

Judgment affirmed.