**UNITED STATES**

v.

**Charles Thomas BRYAN and James Eston Echols.**

**Appeal of Charles Thomas BRYAN.**

No. 72–1063.

United States Court of Appeals,
Third Circuit.

Submitted on briefs Aug. 1, 1972.

Resubmitted for Rehearing before the
Court en banc March 29, 1973.

Decided June 20, 1973.

F. Emmett Fitzpatrick, Jr., Philadelphia, Pa., for appellant.

Victor L. Schwartz, Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Submitted Aug. 1, 1972

Before SEITZ, Chief Judge, and VAN DUSEN and GIBBONS, Circuit Judges.

Submitted for Rehearing before the Court En Banc March 29, 1973

Present SEITZ, Chief Judge, and VAN DUSEN, ALDISERT, ADAMS, GIBBONS, ROSENN and HUNTER, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal of a conviction for aiding and abetting the theft of a shipment in interstate commerce presents the challenging question of whether a defendant who engineered the theft can be found guilty when his co-defendant, charged with being the crime's principal, is acquitted because he may have been an innocent dupe. Two related questions are involved: (1) was any crime committed when the proof failed to demonstrate that the charged principal had felonious intent; and (2) was there an unconstitutional constructive amendment of the indictment if the evidence is viewed as proving that the defendant charged with aiding and abetting was in fact the principal? We hold that a crime was committed, and that appellant Bryan was proven guilty as charged. The judgment of the district court will, therefore, be affirmed.

I

Appellant Bryan and co-defendant, Echols, were tried in a non-jury trial in the Eastern District of Pennsylvania on a two count indictment. The first count charged that Echols stole 950 cases of scotch whiskey from Pier 80 in South Philadelphia, in violation of 18 U.S.C. § 659. The second count, which incorporated by reference the allegations of the first count, charged that Bryan aided and abetted Echols in committing the offense alleged in the first count, in violation of 18 U.S.C. §§ 2 and 659. The district court found Echols not guilty on Count I because it had ". . . considerable difficulty in concluding beyond a reasonable doubt that defendant Echols had the required criminal intent." The court, however, had no such difficulty in finding Bryan guilty on the second count.

Bryan was a terminal manager of Fowler and Williams Freight Lines. U. S. Lines had carried the scotch whiskey, consigned to the Pennsylvania Liquor

Control Board, from Glasgow to Philadelphia. An authorization to pick up the whiskey, together with a copy of the bill of lading, was sent by that consignee to Fowler and Williams. These documents were placed on Bryan's desk. Later Echols appeared at the U. S. Lines pier with these documents, driving a stolen tractor equipped with fake decals and disguised as one belonging to Fowler and Williams. U. S. Lines became suspicious of a possible hijack and called the Fowler and Williams dispatcher to verify if he had sent someone to pick up the shipment of whiskey. When informed that the dispatcher knew nothing about the shipment, U. S. Lines informed the police and the F.B.I. On instruction of an F.B.I. agent, the whiskey was released to Echols, who drove to a diner, where he waited for an hour. Echols made two telephone calls, waited for a further period, and eventually returned the tractor and the whiskey-laden trailer to the U. S. Lines pier.

A polaroid photograph of a Fowler and Williams tractor, on the back of which was printing which described the color scheme of a genuine Fowler and Williams tractor, was found inside the cab of the stolen tractor. The printing was identified as Bryan's. He admitted to the F.B.I. that he had taken the photograph.

Bryan did not testify. Echols, however, took the stand and testified that an unidentified man telephoned him and told him to come to Philadelphia for a truck driving job. He went to the headquarters of Teamsters Local 107. Outside that headquarters an unidentified man asked him to drive a tractor and trailer in substitution for one James Morris and to use Morris' name when picking up the load. He was taken to the stolen tractor, given the papers, directed to Pier 80, and told to take the trailer to a designated diner where someone would meet him. He went to Pier 80, picked up the trailer and drove to the diner. When no one met him there, he returned to Pier 80 where he was arrested. He could identify none of the persons who spoke to him or gave him instructions.

The district court could not find beyond a reasonable doubt that Echols, when removing the liquor, was anything more than an innocent dupe. It concluded, however, that the whiskey had in fact been stolen, and that Bryan, by supplying the Pennsylvania Liquor Control Board authorization, the copy of the bill of lading, and the photograph of a genuine Fowler and Williams tractor, was guilty of aiding and abetting the theft as charged in Count II.

In his original brief on appeal, Bryan, although not taking issue with any factual findings of the district court, contended that the conviction was legally erroneous in three respects: (1) there was no unlawful taking of the goods as they were voluntarily turned over to Echols; (2) no theft was committed because Echols never exercised dominion over the goods with a criminal intent; and (3) Bryan could not be found guilty of aiding and abetting when Echols, the charged principal, was acquitted. After consideration by a panel, the appeal was submitted for reconsideration en banc. Further briefing was requested on the question:

> Since Echols was not found guilty, is the district court judgment of conviction on Count 2 against Bryan so inconsistent with the terms of the indictment as to contravene the Fifth Amendment requirement of indictment by grand jury?

In answer to this question, appellant argued that he was convicted of a crime for which he was not indicted, that crime being participation in the theft as the principal.

## II

We first consider appellant's contention that no crime was committed because U. S. Lines consented to Echols' taking of the shipment of scotch whiskey, although it suspected he was not authorized to do so. The crime alleged here is violation of 18 U.S.C. § 659,

which provides penalties for, *inter alia,* "[w]hoever embezzles, steals, or unlawfully takes, carries away, or conceals . . . from any . . . platform or depot . . . with intent to convert to his own use any goods . . . which constitute an interstate . . . shipment of freight." The crime of stealing under 18 U.S.C. § 659 has been given a broad construction, free from the technical requirements of common law larceny. United States v. De-Normand, 149 F.2d 622, 624 (2d Cir. 1945).[1] A trial court instruction that the jury need only find "an unlawful taking of the goods by the defendants," was found sufficient in *DeNormand.* The consent to the removal of the goods by U. S. Lines personnel in this case does not demonstrate the absence of an unlawful taking. In reviewing the record to determine if there was an unlawful taking, the relevant question involves not the state of mind of personnel of U. S. Lines, but rather the state of mind of defendants.[2]

We therefore find no difficulty in reconciling our conclusion that a crime was committed here with the statements in United States v. Cohen, 274 F. 596, 597 (3d Cir. 1921):

> To constitute "stealing" there must be an unlawful taking . . . with intent to convert to the use of the taker and permanently deprive the owner,

and in Vaughn v. United States, 272 F. 451, 452 (9th Cir. 1921), that in a case of larceny, the corpus delicti consists of two elements:

> First, that the property was lost by the owner; and, second, that it was lost by a felonious taking.

Both formulations of the elements of stealing concentrate on the state of mind of the criminal, not upon that of the possessor of the goods taken. In cases where the lawful possessor indicated to the taker that permission was granted for the taking, a finding of commission of a crime would be unlikely. That, however, is not the case *sub judice.* There is no proof that U. S. Lines led defendants to believe they had permission to take the goods.

The present factual framework differs considerably from those cases suggested by appellant wherein the legal principal apposite is that "when stolen goods are recovered by the owner or his agent before they are sold, the goods are no longer to be considered stolen, and the purchaser cannot be convicted of receiving stolen goods." United States v. Cawley, 255 F.2d 338, 340 (3d Cir. 1958); *see also* United States v. Fusco, 398 F.2d 32 (7th Cir. 1968). The factual situations in those cases involved a theft followed by sale of the stolen goods to a third party. In *Cawley,* the possessor of the goods retrieved them before they were sold. The court held the goods could not be considered stolen after their recovery when the takers were given permission to continue with their original plan to sell them to a third party. This legal principle, adhered to by this court since United States v. Cohen, 274 F. 596, 599 (3d Cir. 1921), is based on the legal definition of stolen property, and on fears that buyers of stolen property may be entrapped. No similar definitional problems or fears are involved in the present case. Unlike *Cawley,* this case discloses no encouragement

---

. The crime detailed in 18 U.S.C. § 659 is therefore different from that detailed in 18 U.S.C. § 2113(b), stealing from a bank. The latter statute describes common law larceny and thus requires a "trespassory taking", a taking without consent. Bennett v. United States, 399 F.2d 740, 742 (9th Cir. 1968). While conviction for violation of 18 U.S.C. § 2113(b) would be impossible under the consensual circumstances found in the present case, the limitations of the com-mon law do not prevent conviction for violation of 18 U.S.C. § 659. *See also* United States v. Patton, 120 F.2d 73 (3d Cir. 1941).

2. At this point in our discussion, we do not discuss the question of whether the states of mind of both defendants, Bryan and Echols, must be felonious to support a conviction of either; that issue is discussed subsequently.

of the defendants to conduct the crime. When the goods were taken from the U. S. Lines platform, they became stolen goods; they did not lose that characterization prior to completion of the offense.

■ Appellant's second contention is that no crime was committed because Echols, the man charged with driving away the goods, was found by the district court not to have had the criminal intent necessary to violate 18 U.S.C. § 659. The district court here stated:

> I think that on the evidence, I simply could not eliminate the considerable doubt as to whether Echols really was criminally involved or whether he was simply an innocent dupe of what was obviously a very well planned, originally at least, enterprise to steal this liquor.

Appellant argues that, because Echols never had possession of the goods adverse to the interest of their owner, there was no crime. A crime, however, may be performed through an innocent dupe. United States v. Kelley, 395 F.2d 727 (2d Cir. 1968), cert. denied, 393 U. S. 963, 89 S.Ct. 391, 21 L.Ed.2d 376 (1968); Boushea v. United States, 173 F.2d 131 (8th Cir. 1949); Beausoliel v. United States, 71 U.S.App.D.C. 111, 107 F.2d 292, 297 (1939). The court aptly stated the basis for this well accepted principle in United States v. Lester, 363 F.2d 68, 73 (6th Cir. 1966):

> It is but to quote the hornbook to say that in every crime there must exist a union or joint operation of act, or failure to act, and intent. However, this is far from suggesting that the essential element of criminal intent must always reside in the person who does the forbidden act. Indeed, the latter may act without any criminal intent whatever, while the *mens rea*—"willfulness"—may reside in a person wholly incapable of committing the forbidden act. . . . And in such a case, of course, only the person who willfully causes the forbidden act to be done is guilty of the crime.

There are numerous examples of convictions of defendants who used innocent dupes to commit crimes, for example, Pereira v. United States, 347 U.S. 1, 8, 74 S.Ct. 358, 98 L.Ed. 435 (1954); United States v. Selph, 82 F.Supp. 56 (S.D.Calif.1949); United States v. Inciso, 292 F.2d 374 (7th Cir. 1961); United States v. One 6.5 mm. Mannlicher-Carcano Military Rifle, 250 F.Supp. 410 (N.D.Tex.1966). Lack of criminal intent by Echols neither negates commission of the crime, nor immunizes Bryan from criminal liability.

### III

Count II of the indictment, having also incorporated by reference the averments of Count I,[3] charged that "on or about May 1, 1970, at Philadelphia in the Eastern District of Pennsylvania, the defendant, CHARLES THOMAS BRYAN did knowingly, willfully and unlawfully aid and abet JAMES ESTON ECHOLS on the commission of said offense. In violation of Title 18 United States Code, § 2 and § 659."

---

3. Count I charged that:
On or about May 1, 1970, at Philadelphia in the Eastern District of Pennsylvania, the defendant, JAMES ESTON ECHOLS did knowingly, wilfully and unlawfully embezzle, steal, take and carry away with the intent to convert to his own use 950 cases of J & B Scotch Whiskey having an approximate value of $20,000 from United States Lines, pier 80 South, Delaware and Snyder Avenues, Philadelphia, Pennsylvania while said cases of whiskey were in a Freuhauf trailer, Maine license 27424 bearing the words United States Lines LSLU 4125726, to which ECHOLS attached a yellow tractor bearing the name Fowler-Williams number 749, Oregon license T273205, said trailer having been parked at the pier in which said 950 cases of J & B Scotch Whiskey were moving as, were a part of and which constituted an interstate and foreign shipment of freight from Glasgow, Scotland to the Pennsylvania Liquor Control Board in Kingston, Pennsylvania.
In violation of Title 18, United States Code, § 659.

Two permissible interpretations of the indictment and of the proof offered by the Government at trial would sustain the conviction: (1) that Bryan aided and abetted Echols in the commission of the offense; or (2) that Bryan was in fact the principal, but the discrepancy between indictment as an aider and abettor, and proof as a principal, was a non-prejudicial variance. On either interpretation, we find the conviction should be affirmed.

█ Appellant's argument suggests that Bryan could not have aided and abetted Echols because Echols was found innocent by the trial court and there is no aiding and abetting offense unless the Government first proves the principal committed the crime. United States v. Jones, 425 F.2d 1048, 1056–1057 (9th Cir. 1970); United States v. Rodgers, 419 F.2d 1315 (10th Cir. 1969). To the extent that there is dictum in *Jones* indicating that the Government cannot convict an aider and abettor without proving that the principal had committed the crime, the later opinion of the Ninth Circuit in United States v. Azadian, 436 F.2d 81 (9th Cir. 1971), suggests re-examination of that dictum. The court permitted conviction of an aider and abettor even though the principal had been acquitted because of entrapment. The dissenter suggested that the court had wholly disregarded the *Jones* case.

In *Rodgers,* a number of prison inmates were each charged and convicted of aiding and abetting each other in instigating a riot, in violation of 18 U.S.C. § 1792. Because the statute makes instigation of a riot illegal, but does not prohibit mere participation therein, and because no principal was shown to have instigated the riot, the court reversed the convictions for aiding and abetting.

This holding is consistent with the general criminal law principles that one cannot be convicted of aiding and abetting unless the proof establishes that the substantive crime was committed by someone. United States v. Provenzano, 334 F.2d 678, 691 (3d Cir.), cert. denied, 379 U.S. 947, 85 S.Ct. 440, 13 L.Ed.2d 544 (1964).

The facts in the present case, however, are significantly different from those in *Rodgers*. The commission of the substantive offense was established. The whiskey was stolen. Echols played a significant role in perpetrating the offense. Although he was found not guilty, because the trial judge had a reasonable doubt as to Echols' criminal intent, there is no doubt that he removed the goods with false documents. Although Echols may have been an innocent dupe, it was he who at least physically removed the whiskey.

█ Appellant would seem to argue that the aider and abettor is guilty only if the principal is also *convicted*. The criminal law has no such requirement. Feldstein v. United States, 429 F.2d 1092, 1095 (9th Cir.), cert. denied, 400 U.S. 920, 91 S.Ct. 174, 27 L.Ed.2d 159 (1970); Meredith v. United States, 238 F.2d 535, 541–542 (4th Cir. 1956).[4] As we said in United States v. Provenzano, 334 F.2d 678, 691 (3d Cir. 1964):

> It is not [the] prerequisite to the conviction of the aider and abettor that the principal be tried and convicted or in fact even be identified. . . . Each participant in an illegal venture is required to "stand on his own two feet."

Aiders and abettors have been convicted in the past when the principal was unidentified, Hendrix v. United States, 327 F.2d 971, 975 (5th Cir. 1964), and even

4. Edwards v. United States, 286 F.2d 681 (5th Cir. 1961), although stating the guilt of the principal is necessary for the conviction of the aider and abettor, does not hold that such guilt was necessary. The holding in *Edwards* was that the trial judge could not instruct the jury that the principal was guilty. The dicta should be read in light of that error to be consistent with the principle that there need not be a conviction of the principal for conviction of the aider and abettor.

when he was acquitted, Pigman v. United States, 407 F.2d 237, 239 (8th Cir. 1969); Gray v. United States, 104 U.S. App.D.C. 153, 260 F.2d 483 (1958).[5]

In *Pigman,* defendant was convicted of interstate transportation of stolen goods although co-defendant Ellis, with whom he was tried, was acquitted when the judge refused to let the jury pass on his guilt because of an insufficiency of identification evidence. The evidence at trial indicated that Pigman and Ellis had been seen together on the night a trailer was moved illegally from Omaha, Nebraska, to Carter Lake, Iowa. Pigman had been seen in the trailer cab, but Ellis had not been seen there by the witnesses at trial. Pigman argued on appeal, nonetheless, that Ellis was the principal according to the Government's case. Pigman further argued he could therefore not be convicted as an aider and abettor as the principal was acquitted. The court affirmed on the basis Pigman could be guilty as the aider and abettor even if there was insufficient evidence to find the principal guilty:

> Ellis was an experienced truck driver and was probably the only one of the trio sufficiently knowledgeable to drive a tractor trailer unit. Identification on Ellis was lacking, but this

does not relieve Pigman of the consequences of his action. On the evidence Pigman appears to be the instigator and the principal. But if not the principal, the evidence duly shows him to be an aider and abettor.

. . .

> No sound reason has been presented why we should nor does justice command us to acquit an accused, proven to be a participant in a crime, because of insufficient evidence against a principal.

407 F.2d at 239. Except that the insufficient evidence in the present case involves the issue of mental intent, rather than the issue of actual participation, *Pigman* involves the same legal principal as the present case.[6] The evidence was insufficient to convince the district court judge in the case before us beyond a reasonable doubt that Echols had a criminal intent,[7] but this does not absolve Bryan of guilt for his participation in the crime.

### IV

■ We turn now to the remaining issue as to whether Bryan's conviction on Count II was so inconsistent with the terms of the indictment as to contravene

---

5. The principle urged by appellant has in the past led to gross miscarriages of justice. "The results of this aspect of the principal-accessory concept are quite absurd. Anything which prevents conviction of the principal makes impossible the conviction of the accessory. Hence, if the principal is never apprehended, or if before the moment of conviction he should die or be pardoned, the accessory must go free although his guilt may be well known and easy to prove." Perkins on Criminal Law 673 (2d ed. 1969). Moreover, the reason for the principal-accessory distinction ceased to exist when most felonies were removed from the category of capital crime. The legislative trend has been to abolish the distinction.

6. Pigman appears to have been indicted as a principal. Since the court had no difficulty affirming his conviction when the proof demonstrated he was an aider and abettor, our position here is strengthened.

7. The district court judge said of the evidence pointing to Echols' guilt:

> I fully recognize that his story is preposterous in many respects and that it does not hang together and is not totally consistent at all times, but I nevertheless am persuaded that on the principal point, namely whether he knew that he was helping steal this liquor, the defendant testified truthfully when he said he did not.
>
> In view of the fact that I have that reasonable doubt, I have no choice but to give the defendant Echols the benefit of the doubt. I recognize that in doing so, I may be making a mistake, but I think that on the evidence, I simply could not eliminate the considerable doubt as to whether Echols really was criminally involved or whether he was simply an innocent dupe of what was obviously a very well planned, originally at least, enterprise to steal this liquor.

the fifth amendment requirement of indictment by grand jury. We believe the proof adequately demonstrated that Bryan aided and abetted Echols in the commission of the crime, exactly as is charged in the indictment. Black's Law Dictionary (Revised 4th Ed. 1968), defines "abet," as "to encourage, incite or set another on to commit a crime." To term Bryan's actions as abetting Echols, therefore, is to describe them precisely. We therefore have difficulty with appellant's assertion that the proof at trial demonstrated that Bryan was the principal, and not the aider and abettor, in the crime charged. Nonetheless, even if the evidence at trial is so viewed and a discrepancy between indictment and proof therefore recognized, we still believe the conviction must stand.

We note first that the distinction between aiders and abettors and principals in cases such as this is to a great extent semantic. Is the driver of the truck the principal because of his physical contact with the stolen goods? Or, should he be viewed as the aider and abettor because the plan for taking the goods was conceived by another person? Conversely, is the man who engineered the theft the principal, or rather the aider and abettor? *See* United States v. Provenzano, 334 F.2d 678, 691 (3d Cir. 1964). Such semantic difficulties were largely eliminated from the federal criminal code by passage of 18 U.S.C. § 2,[8] which makes aiders and abettors punishable as principals. *See* Swanne Soon Young Pang v. United States, 209 F.2d 245, 246 (9th Cir. 1953). At least for purposes of sentencing, therefore, the federal criminal code makes no distinctions between aiders and abettors and principals.

We further note that courts have had no difficulty sustaining convictions when defendants have been charged as principals and proven to have been aiders and abettors, Nye & Nissen v. United States, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949); United States v. Leeper, 413 F.2d 123, 127 (8th Cir. 1969); United States v. Ramsey, 374 F. 2d 192, 196 (2d Cir. 1967); Swanne Soon Young Pang v. United States, 209 F.2d 245 (9th Cir. 1953). As the Fifth Circuit said in United States v. Bullock, 451 F.2d 884, 888 (5th Cir. 1971):

> 18 U.S.C.A. § 2 [the aiding and abetting statute] . . . is an alternative charge in every count, whether explicit or implicit.

Nor have courts had difficulty sustaining convictions when the indictment did not specify whether the defendant was the aider and abettor or the principal. United States v. Provenzano, 334 F.2d 678 (3d Cir.), cert. denied, 379 U.S. 947, 85 S.Ct. 440, 13 L.Ed.2d 544 (1964).

18 U.S.C. § 2 has eliminated the archaic common law distinctions between principals and accessories before and after the fact, and makes them all principals, whether the offense is a felony or a misdemeanor, and subject to the same liability. Von Patzoll v. United States, 163 F.2d 216, 218 (10th Cir. 1947). Thus, in United States v. Bell, 457 F.2d 1231, 1235 (5th Cir. 1972), the court sustained the proposition that one charged as an aider and abettor could be found guilty as a principal. It rejected the contention that the defendant could not be convicted as a principal under a count charging him solely as an aider and abettor, holding: "While the better practice would have been to frame the charge in the alternative, the contention is without merit. Under 18 U.S.C.A. § 2 (1969) an aider and abettor is a principal and can be punished as such." 457 F.2d at 1235.

*Bell* disposed of exactly the same issue as is presented by this case without any

---

8. 18 U.S.C. § 2 provides:
　　(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

　　(b) Whoever wilfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

difficulty. Appellant has argued the issue is not as simple as the Fifth Circuit made it appear because proof that a defendant indicted as an aider and abettor was the principal constitutes constructive amendment of the indictment. We think not.

■ The general rule that the Government may not amend an indictment, either explicitly by motion, or implicitly by presenting proof of a crime different from that charged, has its roots in the fifth amendment requirement of indictment by grand jury and Supreme Court interpretation as early as Ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887). The doctrine that a discrepancy between proof and indictment may be deemed an amendment, reversible *per se,* however, has been recognized and adjudicated extensively only in recent years. The Supreme Court's discussion of indictment and proof discrepancies in Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), has since been interpreted to distinguish between amendments, reversible *per se,* and variances, reversible only if prejudicial to the defendant. *See* United States v. DeCavalcante, 440 F.2d 1264 (3d Cir. 1971); United States v. Silverman, 430 F.2d 106 (2d Cir. 1970); Gaither v. United States, 134 U.S.App.D.C. 154, 413 F.2d 1061 (1969). Prior to *Stirone,* most courts adjudged discrepancies between indictment and proof only by the prejudice standards of Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935):

> The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense.

Were we to find the discrepancy between indictment of Bryan as an aider and abettor, and proof as the principal in the theft of the scotch whiskey from the U. S. Lines dock, to be a variance judged by *Berger* standards, it would seem clear there was no prejudicial error. Acquittal in the trial would have protected Bryan from trial again for the theft of the scotch whiskey. The indictment fully informed him of the crime for which he was to be tried. By explicitly stating that he would be tried for aiding and abetting a man named Echols in the taking of 950 cases of scotch whiskey from Pier 80 in Philadelphia on May 1, 1970, the indictment could not have been more specific in giving notice to Bryan. The proof conformed to the charge; Echols did take the 950 cases of whiskey from Pier 80 in Philadelphia on the date alleged by means of false documents supplied by Bryan. The trial revealed that Bryan not only aided Echols but was in fact the mastermind.

The question, therefore, is only whether the proof here varied from the indictment in such a manner that the indictment was constructively amended and, thus, the conviction was reversible *per se,* regardless of whether Bryan was actually prejudiced. As we recently noted, distinguishing variances from amendments is a difficult intricate task. United States v. Smith, 474 F.2d 844 (3d Cir., filed February 6, 1973). The general theory is that the crime for which a man is convicted must be the same crime as that for which the grand jury indicted him. Therefore, as we said in United States v. DeCavalcante, 440 F.2d at 1272:

> Our inquiry, however, is limited to "whether on its face [the indictment] presents evidence which assures us that such essential elements were presented to the [grand] jury and deliberated upon by them in returning the indictment." United States v. Silverman, *supra* [430 F.2d] at 111.

The focus of our inquiry is whether an element of the offense for which Bryan was convicted was different from an element of the offense for which it appears

from the face of the indictment he was charged.

We find no difference between the elements of the crime charged and the crime proven. We are unable to see how the crime Bryan committed was any different whether he be labeled the aider and abettor of Echols or the principal who used Echols as his dupe. In either case, Bryan's actions, as presented first to the grand jury, and then to the judge at trial, would have been exactly the same; only the legal nomenclature would be changed. Under the federal statute, moreover, the common law nomenclature no longer has any significance.

We therefore hold (1) that a felonious taking was proven; (2) that this taking was a criminal act despite failure to prove Echols' criminal intent beyond a reasonable doubt; and (3) that Bryan was guilty as charged.

·The judgment of the district court will be affirmed.

GIBBONS, Circuit Judge, dissenting.

Appellant Bryan and a co-defendant, Echols, were tried in a non-jury trial in the Eastern District of Pennsylvania on a two-count indictment. The first count charges that Echols stole 950 cases of scotch whiskey from Pier 80 in South Philadelphia, in violation of 18 U.S.C. § 659. The second count incorporates by reference the allegations of the first count, and then charges that Bryan aided and abetted Echols in committing the offense alleged in the first count, in violation of 18 U.S.C. § 2 and § 659. The district court found Echols not guilty on count one because it had ". . . considerable difficulty in concluding beyond a reasonable doubt that defendant Echols had the required criminal intent." The court, however, found Bryan guilty on the second count. Thus, the case is before us in the posture that the principal named in the indictment has been found not guilty of the offense charged, while the aider and abettor has been found guilty of having aided and abetted that same principal in committing the same offense.

Bryan contends that the acquittal of Echols, the named principal, requires his acquittal as an aider and abettor. It is, of course, clear that a defendant may be convicted as an aider and abettor when the principal has not been convicted, has not even been charged, or may be unknown. *E. g.,* Feldstein v. United States, 429 F.2d 1092 (9th Cir.), cert. denied, 400 U.S. 920, 91 S.Ct. 174, 27 L. Ed.2d 159 (1970); Pigman v. United States, 407 F.2d 237 (8th Cir. 1969); United States v. Provenzano, 334 F.2d 678, 691 (3d Cir.), cert. denied, 379 U.S. 947, 85 S.Ct. 440, 13 L.Ed.2d 544 (1964); Hendrix v. United States, 327 F.2d 971 (5th Cir. 1964). It is also clear, however, that one charged solely as an aider and abettor can not be convicted absent proof that some principal committed the substantive offense. *See, e. g.,* United States v. Rodgers, 419 F.2d 1315 (10th Cir. 1969); United States v. Provenzano, *supra,* 334 F.2d at 691; Edwards v. United States, 286 F.2d 681 (5th Cir. 1960). The only substantive offense charged in the indictment was that of Echols. Echols having been acquitted, Bryan urges that the substantive crime charged in the indictment was not proved.

The Government responds to Bryan's contention that although Echols was acquitted for lack of guilty knowledge, the evidence tends to show that he was in fact acting as an unwitting agent for an unknown, or at least unnamed, principal engaged in an attempted theft of the whiskey. *See, e. g.,* Boushea v. United States, 173 F.2d 131, 134 (8th Cir. 1949); Beausoliel v. United States, 71 U.S.App.D.C. 111, 107 F.2d 292, 297 (1939).

The significance of many of the common law distinctions between principals and accessories, between accessories before and after the fact, and between principals and aiders and abettors, have been abolished by statutes such as 18 U.S.C. § 2, which make aiders and abettors

punishable as principals.[1] *See* 4 F. Wharton, Criminal Law and Procedure §§ 1789–92 (1957). If the grand jury had indicted Bryan as a principal, proof that he aided and abetted would suffice to convict. *E. g.,* Nye & Nissen v. United States, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949); Hendrix v. United States, *supra* 327 F.2d at 975; Swanne Soon Young Pang v. United States, 209 F.2d 245 (9th Cir. 1953). If, without naming a specific principal, an indictment charged him as an aider and abettor, proof that he aided and abetted anyone who may have committed the substantive offense would suffice to convict. United States v. Provenzano, *supra* 334 F.2d at 691. But where the grand jury has charged that a specific person committed the substantive offense and that the defendant aided and abetted that specific person, a different problem is presented.

The problem is not so much that the acquittal of the so-called principal requires the acquittal of the aider and abettor. Under statutes such as 18 U.S.C. § 2, the aider and abettor is in law guilty of the substantive offense to the same extent as the so-called principal. The offense of each is complete in itself without the dependency of one on the other. *See, e. g.,* Regina v. Wallis, 1 Salk, 334, 91 Eng.Rep. 294 (1703); Von Patzoll v. United States, 163 F.2d 216 (10th Cir.), cert. denied, 332 U.S. 809, 92 L.Ed. 386 (1947); 4 F. Wharton, Criminal Law and Procedure §§ 1789–92 (1957); G. Williams, Criminal Law § 66 (1953). The complicating factor is that clause of the Fifth Amendment requiring indictment by a grand jury for infamous crimes. The crime with which Bryan is charged falls within that clause, Fed.R.Crim.P. 7, and if the grand jury charges one offense, the trial court may not try another. Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960); Ex parte

Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887). The grand jury did not indict Bryan as a principal. It did not indict him as an aider and abettor of persons unknown. It indicted him as an aider and abettor of a specific named principal. The Government in response to a motion for a bill of particulars reiterated that Echols was the thief who stole the whiskey with an intent to convert it to his own use and that Bryan aided and abetted Echols by supplying the means by which Echols converted the whiskey to Echols' own use. Bryan has been convicted, however, on evidence which does not establish beyond a reasonable doubt that the specific principal named in the indictment and in the bill of particulars committed the offense. The district court may not convict him of being an aider and abettor on the basis of evidence relevant only to a charge of being a principal; a charge for which he was not indicted.

Keeping in mind the language of both the indictment and the bill of particulars, and putting myself in the position of Bryan's trial attorney, the tactical decision not to offer Bryan's testimony seems eminently sound. Bryan did not have the burden of persuading the court that he hadn't committed a theft. The Government had the burden of proving beyond a reasonable doubt the one offense with which he was charged in the indictment. The Government attempted to prove not that persons unknown committed a theft, or that Bryan committed a theft, but that Echols committed a theft to which Bryan was an aider and abettor. The Government's proof on Echols' theft was insufficient to withstand a motion. Now, after the case is closed, and after Bryan has lost the opportunity to testify in his own behalf, the majority sustains the conviction on a theory that the grand jury did not consider, that the Government's case did not present, and of which neither before

---

1. This is made clear by the legislative background of the revision of this section which determined the present statutory language. A synopsis of the legislative history is found in Swanne Soon Young Pang v. United States, 209 F.2d 245, 246 (9th Cir. 1953).

nor during the trial was Bryan given notice.

The proper course in this case is suggested by the recent opinion of Judge Soboloff in United States v. Shuford, 454 F.2d 772 (4th Cir. 1971). That case involved not an outright acquittal of the named principal, but the grant of a new trial. With respect to a codefendant charged only as an aider and abettor, he wrote:

> "However, the peculiar circumstances of the case prevent us from affirming Jordan's conviction at this time. As the indictment and the evidence at trial show, Jordan's involvement with the substantive crime charged was that of an aider and abettor of Shuford as principal. It is an accepted rule that where the only potential principal has been acquitted, no crime has been established and the conviction of an aider and abettor cannot be sustained. Shuttlesworth v. City of Birmingham, 373 U.S. 262, 83 S.Ct. 1130, 10 L.Ed.2d 335 (1963). This rule, undeviatingly followed for generations, would be offended if on retrial, Shuford, the principal, should be acquitted and the conviction were allowed to stand as to Jordan, the aider and abettor. We therefore vacate Jordan's conviction on the substantive count, under 18 U.S.C. §§ 2 and 1001, contingent upon Shuford's conviction, at his retrial, of the substantive offense charged." *Id.* at 779 (footnote omitted).

Judge Soboloff's approach obviously seems to the majority unduly technical. Certainly the majority opinion abounds with evidence of impatience with "semantic difficulties" and "archaic common law distinctions." But semantic differences and legal distinctions are the essence of a system of justice which imposes upon the Government the obligations of obtaining from a grand jury an indictment for a specific charge and of proving that charge beyond a reasonable doubt. Administration of a technical and often semantical criminal justice system is the price we pay for the bal-

ance struck in the Constitution between the federal government and the individual defendant. I would reverse.

Chief Judge SEITZ and Judge ALDISERT concur in this dissent.